**John V. BOZARTH, Appellant,**

v.

**ATLANTIC RICHFIELD OIL COMPANY, INC.,**
Appellee.

**No. S–3990.**

Supreme Court of Alaska.

May 18, 1992.

Don Clocksin, Wagstaff, Pope & Clocksin, Anchorage, for appellant.

Russellyn S. Carruth, Michael W. Seville, Burr, Pease & Kurtz, Anchorage, and Lloyd C. Loomis, Atlantic Richfield Co., Los Angeles, Cal., for appellee.

Before RABINOWITZ, C.J., and BURKE, MATTHEWS, COMPTON and MOORE, JJ.

## OPINION

MOORE, Justice.

John Bozarth, a pilot for Atlantic Richfield Company (ARCO), was fired after he refused to participate in ARCO's random

drug-testing program. Bozarth sued, claiming that the dismissal was really in retaliation for whistle-blowing. Bozarth had repeatedly complained about unsafe practices in ARCO's aviation department.

Shortly after filing suit, Bozarth applied for state unemployment insurance benefits. These were denied on the grounds that Bozarth's discharge was due to work-related misconduct. The denial was upheld by the Appeals Tribunal of the Employment Security Division. No appeal of this decision was taken.

After discovery, both parties moved for summary judgment. ARCO's motion was granted. The court based its decision on two alternative grounds. The first was collateral estoppel. Bozarth was bound by the decision of the Appeals Tribunal which established that his dismissal was the result of his misconduct. Second, even if Bozarth was not bound by the decision of the Appeals Tribunal, there was no genuine issue of material fact. Bozarth failed to introduce admissible evidence that his firing was based on any reason other than his refusal to take the drug test. The trial court stated:

> Because [Bozarth] and [ARCO] were represented at the Employment Security Division Appeals Tribunal, because the issues argued here are identical to those argued before the Appeals Tribunal, and because [Bozarth] did not appeal the Tribunal's final decision on the termination issue, the Court concludes that [Bozarth] is collaterally estopped from litigating before this forum the circumstances leading to his termination and that his refusal to participate in the drug-testing program was misconduct. *DeNardo v. State*, 740 P.2d 453 (Alaska 1987).

[ARCO] prevails even without resort to a collateral estoppel analysis, for there exists no genuine issue of fact regarding the circumstances leading to [Bozarth's] termination. Although [Bozarth] argues that he and his immediate supervisor, John Schmidt, were in conflict over [Bo-

zarth's] participation in the National Guard and [Bozarth's] "whistle-blowing", he fails to raise a genuine issue of material fact thereby. Camron Cooper, the ARCO supervisor who made the decision to terminate [Bozarth], maintains she was not aware of [Bozarth's] conflict with Schmidt and based her decision to terminate [Bozarth] solely upon [Bozarth's] refusal to participate in [ARCO's] drug-testing program. [Bozarth] dismisses Cooper's testimony as ludicrous, but such dismissal is not sufficient. The Cooper testimony stands unrebutted in this record by any opposing admissible evidence. No genuine issue of material fact is created.

ARCO then moved for attorney's fees, seeking an award equal to seventy percent of the attorney's fees incurred, $156,425. The court found a slight overcharge, and determined that a reasonable fee for the services performed by ARCO's attorneys was $152,000. The court then awarded fifty percent of this amount, $76,000, as partial compensation under Civil Rule 82. In addition, the court awarded $14,600 in costs.

On appeal, Bozarth claims that the court erred in granting summary judgment to ARCO because the decision of the Appeals Tribunal of the Employment Security Division should not have been given preclusive effect, and because there were genuine issues of material fact regarding the reasons for Bozarth's termination.[1] In addition, Bozarth claims that the award of attorney's fees is excessive and that the cost award is the product of several errors.

We affirm the decision of the trial court on the grounds that there were no genuine issues of material fact. The record demonstrates that the decision to fire Bozarth was made by Camron Cooper, a senior vice-president of ARCO, and that she made that decision solely on the basis of his refusal to participate in ARCO's drug-testing program. Cooper asserted that she knew nothing about Bozarth's safety complaints

---

1. Both parties assume for the purposes of this point on appeal that Bozarth could be dis-    charged only for cause.

or about other conflicts with his immediate supervisors. This assertion stands unrebutted in the record.

▮ A private employer may, with notice, require its employees to take a test for drugs. *Luedtke v. Nabors Alaska Drilling, Inc.*, 768 P.2d 1123 (Alaska 1989). Failure of an employee to comply with a reasonable order of his employer is cause for discharge. *Central Alaska Broadcasting v. Bracale*, 637 P.2d 711 (Alaska 1981). Bozarth was ordered to submit to a drug test after being notified of ARCO's drug-testing program, and he refused to submit. Under the above authorities, this failure was a legitimate basis for Bozarth's discharge.

▮ Opposing the award of attorney's fees, Bozarth argues that some of ARCO's attorneys billed at an excessive hourly fee. Bozarth cites *Municipality of Anchorage v. Baugh Construction and Engineering Co.*, 722 P.2d 919 (Alaska 1986). To calculate an award under Civil Rule 82, the trial court in that case reduced attorney's fees billed at $200 per hour for in-trial work and $175 for out-of-trial work, to $120 and $105 respectively. The issue in *Baugh*, however, was not whether $175 per hour was excessive. The issue was whether the trial court made a mathematical error in calculating the hourly rate it would allow. *Baugh* does not stand for the proposition that attorneys may not reasonably charge $175 per hour.

Hourly fees of $165–$175 were charged by the more senior members of the law firm defending ARCO. These fees were represented to be the standard fees for those attorneys. No persuasive evidence has been presented that they are unreasonable. Further, because much work was done by firm associates, the average hourly fee charged ARCO was about $136 per hour. This rate likewise has not been shown to be unreasonable.

▮ In the context of this case, while the court's award of attorney's fees seems high, we are unable to say that the work performed by ARCO's attorneys was not necessary or appropriate, or that billing $152,000 for their services was unreasonable.[2] Awarding fifty percent of this amount falls comfortably within the partially compensatory standard of Civil Rule 82. *Brunet v. Dresser Olympic Div. of Dresser Indus., Inc.*, 660 P.2d 846, 847–48 (Alaska 1983); *Stevens By Park View Corp. v. Richardson*, 755 P.2d 389, 396 (Alaska 1988). Therefore, the award of attorney's fees is valid.[3]

▮ With respect to costs, Bozarth challenges the allowance of costs for certain unspecified depositions, arguing that "[d]eposition costs may be awarded only where the depositions are actually used at trial, or where depositions were actually relied upon in ruling on a pre-trial motion." Civil Rule 79(b) allows as awardable costs "the necessary expense of taking depositions for use at trial and producing exhibits . . . ."

In *Kaps Transport, Inc. v. Henry*, 572 P.2d 72 (Alaska 1977), we interpreted Civil Rule 79(b) broadly to allow an award for the cost of depositions taken in good faith which were reasonably necessary, even if they were not actually used at trial. We noted that depositions might be used to support a pre-trial motion, or for cross-examination, or to preserve the testimony of a witness who might become unavailable. *Id.* at 78. Implicit in our discussion in *Kaps* is the conclusion that it is not

2. Bozarth sought an award of compensatory damages in excess of $500,000; numerous pre-trial motions were made; and at least twenty-one depositions were taken.

3. The award of $76,000 in attorney's fees against a dismissed employee is nonetheless disturbing. It tends to cast doubt on the continued desirability of Civil Rule 82. The rule is grounded on basic fairness. One who has been forced to litigate in order to vindicate one's rights should be reimbursed in part for litigation expenses. It may be, however, that costs of litigation have increased to such an extent that the prospect of having to pay Rule 82 fees deters a broad spectrum of our populace from the voluntary use of our courts. We have asked our Civil Rules Standing Committee to review this question. In this case, however, we can conceive of no principled basis by which the award of attorney's fees granted by the superior court can be reduced or vacated.

possible to make a clear distinction between depositions taken for discovery purposes and depositions taken in preparation for trial. That is illustrated by this case. ARCO contends credibly that all depositions were taken for purposes such as preservation of testimony, cross-examination, and impeachment, as well as discovery. We conclude the actual use standard which Bozarth advocates is in conflict with the reasonably necessary standard of *Kaps,* and that the award of costs met the latter standard and was not an abuse of discretion.

AFFIRMED.

MATTHEWS, Justice, joined by COMPTON, Justice, dissenting in part.

The framers of the Alaska Constitution established the superior court as the trial court of general jurisdiction for our state. Alaska Const. art. IV, § 3. One purpose of the superior court is to serve as an institution to which the people of Alaska may resort when they believe that they have suffered a legal wrong. Crushing attorney's fees such as the $76,000 award which today's opinion approves so seriously limit this purpose that they are, in my opinion, fundamentally at odds with our constitution.

The general right of access to civil courts was recognized by this court in *Bush v. Reid,* 516 P.2d 1215, 1218–21 (Alaska 1973), where we invalidated on due process and equal protection grounds a statute which precluded a person on parole from bringing a civil action. In so doing, we relied primarily on *Boddie v. Connecticut,* 401 U.S. 371, 91 S.Ct. 780, 28 L.Ed.2d 113 (1971), in which the United States Supreme Court held that indigents could not be deprived of access to divorce courts by the imposition of filing fees which they were unable to pay. Because the parolee's lawsuit in *Bush* arose out of a personal injury suffered in an automobile accident, it was distinguishable from the divorce litigation in *Boddie.* We found, however, that this distinction should not dilute the force of the *Boddie* rationale, especially as a matter of state constitutional law. *Bush* at 1219–20.

Similarly, in *Patrick v. Lynden Transport, Inc.,* 765 P.2d 1375 (Alaska 1988), we recognized the right of access to the courts as declared in *Boddie* and rejected the view that *Boddie* should be limited to divorce cases. *Id.* at 1378–79.

We have also recognized the right of access to the courts in the specific context of court awarded attorney's fees. In *Malvo v. J.C. Penney Co.,* 512 P.2d 575, 588 (Alaska 1973), we reversed a $10,500 award which represented the prevailing litigant's full attorney's fees. After noting that the purpose of Civil Rule 82 "is to *partially* compensate a prevailing party for the costs to which he has been put in the litigation in which he was involved," *id.* at 587 (quoting *Preferred General Agency of Alaska, Inc. v. Raffetto,* 391 P.2d 951, 954 (Alaska 1964)), we stated:

> If a successful litigant were to receive full reimbursement for all expenses incurred in the case with no requirement of justification and no consideration of the "good faith" nature of the unsuccessful party's claim or defense, *there would be a serious detriment to the judicial system.* For where in order to seek judicial remedies, a plaintiff must risk liability for the full amount of attorney's fees the other side sees fit to incur, it takes little imagination to foresee that *the size of a party's bank account will have a major impact on his access to the courts.*

*Id.* (emphasis supplied). We then cited *Boddie* and quoted the following language from that opinion:

> [A] cost requirement, valid on its face, may offend due process because it operates to foreclose a particular party's opportunity to be heard. The State's obligations under the Fourteenth Amendment are not simply generalized ones; rather, the State owes to each individual that process which, in light of the values of a free society, can be characterized as due.

*Malvo* at 587. Having referred to the constitutional issue, we declined to reach it because, as we put it, "it is 'manifestly unreasonable' to establish a policy under Civil Rule 82 that would enable a store

owner to receive such a sizeable allowance for attorney's fees against a party who has brought suit in good faith." *Id.*

Although the discussion in *Malvo* was directed to a trial court's award of full fees, much of the rationale is also applicable to substantial awards of partial fees against litigants of limited resources. If a $10,500 attorney's fee award is so great as to "foreclose a particular party's opportunity to be heard" it has that effect independent of whether it represents the prevailing party's full, or merely partial, fees.

Former Chief Justice Boochever recognized this in his dissent in *Sloan v. Atlantic Richfield Co.*, 552 P.2d 157, 161–62 (Alaska 1976). In *Sloan*, the trial court ordered the widow of a deceased construction worker to pay attorney's fees of $10,750 in a wrongful death case, about half of the full fees requested by the prevailing party. *Id.* at 161. Citing the reasoning of *Malvo*, Mrs. Sloan argued that the award against her was so large it would have a chilling effect on the use of our courts by many holding bona fide claims. A majority of the court rejected this argument, noting, "we do not view this case as falling within an exceptional category." *Sloan* at 161. Chief Justice Boochever dissented, stating that if Mrs. Sloan had "[f]oreknowledge that such a sizeable sum would be awarded as attorney's fees in the event of her losing" it "could well have constituted an impediment to access to the courts preventing litigation of an issue which she had every right to have resolved." *Id.* at 162. Noting the concern expressed in *Malvo* "that access to the courts might be governed by the size of one's bank account," *id.*, Chief Justice Boochever stated that in applying Civil Rule 82, trial courts "must give consideration to the nature of the claim and the need for making courts available to resolve disputes without the imposition of intolerable burdens." *Id.*

I agree with Chief Justice Boochever that in determining what fees constitute a "reasonable amount" under Civil Rule 82(a)(1), trial courts must consider whether the award is so great that it imposes an intolerable burden on a losing litigant which, in effect, denies the litigant's right of access to the courts.

The guidelines for making such a determination are not easy to express. Chief Justice Boochever in *Sloan* indicated that "other than stating broad policy considerations," he was "unable to delineate specific guidelines for a trial judge to follow in awarding attorney's fees." *Id.* He then settled on the "admittedly ... arbitrary figure" of $2500 as "the maximum that I think could be awarded without unduly limiting access to the courts under the facts of this case." *Id.*

While it is difficult to prescribe guidelines for the trial courts to follow in this area, trial courts should at least consider whether an award may be so onerous to the losing litigant that it unduly limits the constitutional right of access. Over time, the process of case-by-case adjudication will yield more specific directions. I suggest presently that in wrongful discharge claims the award of attorney's fees not exceed some fraction of the former employee's annual income.

This case is only one of a number of cases which we have had occasion to review recently involving very large awards of attorney's fees. *See Zeilinger v. SOHIO Alaska Petroleum Co.*, 823 P.2d 653 (Alaska 1992) (superior court awarded $80,470 to employer in wrongful discharge case—reversed on appeal as excessive); *Van Huff v. Sohio Alaska Petroleum Co.*, appeal pending, No. S–4373 (superior court awarded $117,251 in attorney's fees in favor of employer in wrongful discharge case). In each of these cases an individual citizen believing in good faith that his or her legal rights had been violated pursued dispute resolution in the superior court in the manner contemplated by our constitution. The citizen lost and was subjected to a financially ruinous award of attorney's fees.

If the superior court is to serve its constitutional purpose as a forum available to all the people, superior court judges must consider whether an award of attorney's fees will impair the constitutional right of access to the courts. In the present case it

is evident that no such consideration was given. Therefore, I would reverse the award of attorney's fees and remand for further proceedings in accordance with the views expressed herein.