Evie RHODES, Appellant,

v.

Becky ERION, Appellee.

No. S–12402.

Supreme Court of Alaska.

Aug. 1, 2008.

Jeffrey J. Barber, Law Offices of Steve Sims, Anchorage, for Appellant.

Gregory R. Henrikson, Walker & Eakes, Anchorage, for Appellee.

*OPINION*

FABE, Chief Justice.

## I. INTRODUCTION

Evie Rhodes was involved in a car accident with Becky Erion, and Rhodes sued Erion. Erion made three offers of judgment to Rhodes under Alaska Civil Rule 68, but Rhodes failed to accept these offers. The case proceeded to trial, and the jury awarded Rhodes $18,281.85 in damages. This verdict was at least five percent less favorable to Rhodes than an offer made by Erion, and Rhodes was therefore liable for fifty percent of Erion's reasonable actual attorney's fees under Rule 68. The trial court awarded fees of $42,263.50, which offset the damages awarded to Rhodes and left Rhodes with a balance of $17,411.45 payable to Erion. Rhodes asked the trial court to reconsider its award of attorney's fees, requesting that it apply the Alaska Civil Rule 82(b)(3) factors to reduce the award. The trial court declined to do so.

Rhodes appeals the award of attorney's fees, contending that the trial court's refusal to reduce the award was an abuse of discre-

tion and that Rule 68 violates the due process and equal protection clauses of the Alaska Constitution. Because we conclude that the trial court did not abuse its discretion in declining to reduce Erion's award of attorney's fees, and because Rhodes waived her constitutional arguments, we affirm.

## II. FACTS AND PROCEEDINGS

On February 15, 2003, a car driven by Becky Erion collided with a car in which Evie Rhodes was a passenger at the intersection of A Street and 38th Avenue in Anchorage. Rhodes's car was stopped when Erion's car hit it and Rhodes sustained injuries. Rhodes sued Erion in superior court in June 2003.

Between 2004 and 2005, Erion made three Rule 68 offers of judgment to Rhodes, ranging from $20,000 to $30,000, two of which were inclusive of interest, Rule 82 attorney's fees, and allowable costs. These offers were not accepted.[1] In October 2004, and again in October 2005, Rhodes requested and was granted continuances. The case proceeded to a jury trial in June 2006.

The trial lasted eight days, and the trial court characterized Rhodes's prosecution of the case as "vigorous." Rhodes called eleven witnesses; Erion called two. Although Rhodes sought a "million dollar plus verdict," the jury ultimately awarded Rhodes $18,281.85 in past damages and nothing for future losses. With prejudgment interest, Rule 82 attorney's fees, and Alaska Civil Rule 79 costs, Rhodes's verdict totaled $27,016.12. Erion calculated this amount to be at least five percent less favorable to Rhodes than Erion's June 2004 offer of $30,000, and moved for attorney's fees under Rule 68.[2] Rhodes requested enhanced attorney's fees under Rule 82, pointing to the complexity and length of the trial, the rea-

---

1. Rhodes also made two offers of judgment to Erion—one for $100,000, exclusive of interest, Rule 82 attorney's fees, and allowable costs, and another for $100,000, inclusive of these costs. Erion did not accept these offers.

2. Rule 68(b) provides, in relevant part, that [i]f the judgment finally rendered by the court is at least 5 percent less favorable to the offer-ee than the offer [of judgment], ... the offeree ... shall pay all costs as allowed under the

Civil Rules and shall pay reasonable actual attorney's fees incurred by the offeror from the date the offer was made as follows: ... (2) if the offer was served more than 60 days after the date established in the pretrial order for initial disclosures ... but more than 90 days before the trial began, the offeree shall pay 50 percent of the offeror's reasonable actual attorney's fees.

sonableness of the claims and defenses presented by each side, and other equitable factors.

Rhodes argued that Erion's June 2004 offer of judgment was invalid, that Rhodes's judgment actually exceeded Erion's offers, and that Rule 82(b)(3)(I), (J), or (K) required the trial court to deny Erion attorney's fees. The trial court was unconvinced by Rhodes's arguments and granted Erion fifty percent of her attorney's fees under Rule 68, an award totaling $42,263.50. This award completely offset Rhodes's judgment, which with prejudgment interest totaled $24,852.05, and left her with a balance of $17,411.45 payable to Erion.

Rhodes filed a motion for reconsideration, requesting an itemization of Erion's legal bills to assess the reasonableness of the fees. She also argued that the trial court should have reduced the award under Rule 82(b)(3)(I), (J), or (K). The trial court directed Erion to respond to Rhodes's request for itemized bills but confirmed that Erion need not address Rhodes's second argument because the court found no basis to apply the Rule 82(b)(3) factors. Erion complied with the trial court's order and submitted itemized bills to Rhodes and the trial court. Rhodes then submitted supplemental briefing, contending that Erion's fees were unreasonable and that the trial court should reduce the award under the Rule 82(b)(3) factors. On October 4, 2006, the trial court denied Rhodes's motion for reconsideration, finding that its award was reasonable given the "vigorous prosecution of the case and the exposure to the [defendant]."

The parties agree that Rhodes's verdict is at least five percent less favorable to her than Erion's June 2004 offer of $30,000 and that Rhodes is therefore liable to Erion for a portion of Erion's attorney's fees under Rule 68. Rhodes contends that the trial court erred in its refusal to reduce the award under the Rule 82(b)(3) factors and argues alternatively that Rule 68 is unconstitutional.

## III. STANDARD OF REVIEW

■ We review awards of attorney's fees for abuse of discretion.[3] Such abuse exists if the award is "arbitrary, capricious, manifestly unreasonable, or improperly motivated."[4] We interpret our civil rules and address constitutionality de novo, adopting the rule of law most persuasive in light of precedent, policy, and reason.[5]

## IV. DISCUSSION

### A. The Trial Court Did Not Abuse Its Discretion by Declining To Reduce Erion's Rule 68 Award of Attorney's Fees Under Rule 82(b)(3).

■ The heart of Rhodes's argument on appeal is that Erion spent more on her defense than the amount in controversy. Rhodes contends that doing so made no economic sense and demonstrated Erion's intent to deter future claimants from suing insurers. Consequently, Rhodes argues, the trial court should have reduced the attorney's fees award assessed against her under Rule 82(b)(3)(I) or (J).[6]

We note at the outset that whether Erion spent more on her defense than the amount in controversy is not dispositive. In *Magill v. Nelbro Packing Co.*, we initially expressed surprise that an attorney's fees award of $172,970.50 to defend a $200,000 controversy could be reasonable.[7] But we explained that "[w]e will not overturn an attorney's fees award solely because the amount of actual fees upon which the award is based exceeds

---

3. *Kellis v. Crites,* 20 P.3d 1112, 1113 (Alaska 2001).

4. *Id.*

5. *Id.* at 1113–14; *Sands ex rel. Sands v. Green,* 156 P.3d 1130, 1132 (Alaska 2007).

6. Rule 82(b)(3)(I) permits courts to vary an award of attorney's fees considering "the extent to which [the award] may be so onerous to the non-prevailing party that it would deter similarly situated litigants from the voluntary use of the courts." Rule 82(b)(3)(J) allows courts to vary an award considering "the extent to which the fees incurred by the prevailing party suggest that they had been influenced by considerations apart from the case at bar, such as a desire to discourage claims by others against the prevailing party or its insurer."

7. 43 P.3d 140, 144 (Alaska 2001).

or is close to the amount in controversy." [8] We ultimately affirmed the award in *Magill*, determining that the circumstances of the case justified it and noting that "some responsibility for the large amount of fees lies with the plaintiffs, who vigorously pushed the case." [9]

As in *Magill*, a number of factors support the trial court's conclusion in this case that the award was appropriate. The case took three years to get to trial and was continued twice, both times at Rhodes's request. Substantial motion practice took place, including a *Daubert*[10] hearing on the admissibility of expert testimony. The trial lasted eight days and featured the testimony of thirteen witnesses, eight of whom were experts.

Rhodes contends that the most she could have recovered from Erion was $112,500—$100,000 from the liability policy plus $12,500 in Rule 82 attorney's fees. But as the trial court recognized, Rhodes was seeking a "million dollar plus" verdict from the jury, and that was the amount in controversy, not the policy limit. Rhodes claims that she planned to seek any amount over $112,500 from her own underinsured motorist coverage, thus rendering Erion's defense against any excess award unnecessary. Yet Rhodes concedes that Erion could have been found liable for a large verdict in excess of her policy limit, regardless of Rhodes's hypothetical collection strategy: "In the event of a $900,000 judgment, Mrs. Rhodes gets $100,000 under Ms. Erion's State Farm insurance policy, $12,500 in Rule 82 attorney fees, prejudgment interest, and a piece of paper indicating that Ms. Erion ... owes her the balance." Rhodes's assumption that any amount over $112,500 would have been uncollectible from Erion is flawed because nothing in the record suggests that Erion had insufficient assets to satisfy a verdict in excess of her policy limit. And Erion's insurer had a duty to defend her against the "million dollar plus" verdict sought by Rhodes.[11]

Rhodes also contends that Erion's award should be reduced under Rule 82(b)(3)(K). Rule 82(b)(3)(K) is a catch—all clause that permits courts to vary fees considering "other equitable factors deemed relevant." Rhodes argues that this factor favors reduction because Erion's award was "simply unfair," because the amount Erion spent on her defense was "shameful," and because the trial court's decision not to apply Rule 82(b)(3)(K) was "manifestly unjust." These contentions fail because, as we concluded above, the award was not unjustified. The trial court explicitly rejected reducing the award on the basis of Rule 82(b)(3)(K), and that rejection was not unreasonable.

But this conclusion does not end our inquiry. Rule 82(b)(3)(I) and (J) call upon the court to examine more than just whether the award was reasonable under the circumstances; they invite the court to consider what effect this award may have on future litigants. Is the Rule 68 award assessed against Rhodes so onerous that it will deter similarly situated litigants from the voluntary use of the courts? Will it mean, as Rhodes argues, that future personal injury claimants are no longer able to retain lawyers on contingency fee bases?

The result in this case was less than ideal from Rhodes's perspective. A jury found that Rhodes was injured and awarded her over $18,000 in damages, but her judgment was not only offset by the fee award, she was also left with a $17,411 bill. We have expressed concern in the past about "financially ruinous fee awards" [12] and their impact on access to the courts.[13] Indeed, we consid-

**8.** *Id.*

**9.** *Id.* at 145.

**10.** *Daubert v. Merrell Dow Pharm., Inc.,* 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993); *State v. Coon,* 974 P.2d 386 (Alaska 1999) (adopting the federal *Daubert* standard for evaluating the admissibility of scientific evidence and expert testimony).

**11.** *See, e.g., Tush v. Pharr,* 68 P.3d 1239, 1249 (Alaska 2003) ("The duty to defend is broader than the duty to provide coverage.").

**12.** *Reid v. Williams,* 964 P.2d 453, 462 (Alaska 1998) (internal quotations omitted).

**13.** *See, e.g., id.; State v. Native Vill. of Nunapitchuk,* 156 P.3d 389, 405–06 (Alaska 2007); *Bozarth v. Atl. Richfield Oil Co.,* 833 P.2d 2, 4 n. 3 (Alaska 1992); *Malvo v. J.C. Penney Co.,* 512 P.2d 575, 587–88 (Alaska 1973).

ered a case not unlike the one at bar in *Bozarth*.[14] Bozarth, a dismissed employee, brought an action against his former employer claiming that his dismissal was improper retaliation for whistleblowing.[15] He lost and was charged $76,000 in Rule 82 attorney's fees, an award we affirmed.[16] In his dissent, Justice Matthews cautioned that "[i]f the superior court is to serve its constitutional purpose as a forum available to all the people, superior court judges must consider whether an award of attorney's fees will impair the constitutional right of access to the courts. In the present case it is evident that no such consideration was given."[17] This concern about access to the courts played a role in the addition of Rule 82(b)(3)(I) in 1993.[18]

■ But unlike the lower court in *Bozarth*, the trial court in this case did consider whether the award was so onerous as to impair access to the courts. It explicitly ruled on the issue on two separate occasions—in its order directing Erion to file a response to Rhodes's motion to reconsider attorney's fees,[19] and again in its order denying Rhodes's motion to reconsider attorney's fees.[20] On both occasions the trial court concluded that the circumstances of the case justified the award. Application of Rule 82(b)(3) factors is discretionary, not mandatory.[21] The trial court received substantial briefing on this issue and twice concluded that Rule 82(b)(3) factors did not apply. The trial court's decision declining to reduce the Rule 68 award under the Rule 82(b)(3) factors was not an abuse of discretion.

**B. Rhodes Waived Her Constitutional Arguments.**

■ Rhodes argues that the due process guarantee of access to the courts required the trial court to reduce Erion's Rule 68 award under the Rule 82(b)(3) factors and that "[t]he disparate treatment for plaintiffs and defendants under Rule 68 violates equal protection and due process." Although she failed to brief these constitutional arguments before the trial court, Rhodes contends that her Rule 82(b)(3)(I) arguments in the trial court were sufficient to preserve the constitutional issues for appeal. Alternatively, she argues that the trial court committed plain error by declining to reduce the award under Rule 82(b)(3) on constitutional grounds.

But an argument that the Rule 82(b)(3) factors should be applied to reduce an award is not enough to preserve an appellate claim that Rule 68 is unconstitutional.[22] Rhodes did not raise a constitutional argument at the trial court level, and she failed to include any constitutional arguments in her amended points on appeal. Rhodes thus waived her constitutional arguments.[23] And Rhodes's plain error argument is unavailing given that in deciding a facial challenge to the statutory provision governing offers of judgment, we "decline[d] to expand the right of access to prohibit an offer of judgment scheme."[24]

**V. CONCLUSION**

Because the trial court did not abuse its discretion in declining to reduce Erion's award of attorney's fees under Rule 82(b)(3), and because Rhodes waived her constitutional arguments regarding the award, we AF-

**14.** 833 P.2d 2.

**15.** *Id.* at 2–3.

**16.** *Id.* at 3–5.

**17.** *Id.* at 6–7 (Matthews, J., dissenting).

**18.** Susanne DiPietro & Teresa W. Carns, *Alaska's English Rule: Attorney's Fee Shifting in Civil Cases*, 13 ALASKA L.REV. 33, 45 (1996).

**19.** The trial court stated that it found "no basis to apply the factors set forth in Civil Rule 82(b)(3)(I)[,] (J) or (K)."

**20.** In that order, the trial court noted again that there was "no basis to apply the factors set forth in Civil Rule 82(b)(3)(I)[,] (J) or (K)."

**21.** Rule 82(b)(3) ("The court may vary an attorney's fee award . . . if, upon consideration of the factors listed below, the court determines a variation is warranted.").

**22.** *See, e.g., Kellis v. Crites,* 20 P.3d at 1114–15.

**23.** *Fernandes v. Portwine,* 56 P.3d 1, 9 n. 27 (Alaska 2002); *Wells v. State,* 46 P.3d 967, 970 n. 7 (Alaska 2002).

**24.** *Evans ex rel. Kutch v. State,* 56 P.3d 1046, 1064 (Alaska 2002).

FIRM the decision of the trial court in all respects.