*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@akcourts.us.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | |
|---|---|
| KELLY A. DICKSON, TRUSTEE OF THE KELLY A. DICKSON 2008 TRUST, and DONNA C. DEFUSCO, | ) ) ) ) |
| Appellants, | ) ) |
| v. | ) ) |
| STATE OF ALASKA, DEPARTMENT OF NATURAL RESOURCES, and also all other persons or parties unknown claiming a right, title, estate, lien, or interest in the real estate described in this action, | ) ) ) ) ) ) ) ) |
| Appellees. | ) ) ) |

Supreme Court No. S-17620

Superior Court No. 3AN-12-07260 CI

O P I N I O N

No. 7534 – May 28, 2021

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Anchorage, Catherine M. Easter, Judge.

Appearances: Adolf V. Zeman and Leslie R. Need, Landye Bennett Blumstein LLP, Anchorage, for Appellants. Cheryl R. Brooking, Assistant Attorney General, Anchorage, and Kevin G. Clarkson, Attorney General, Juneau, for Appellee State of Alaska.

Before: Bolger, Chief Justice, Winfree, Maassen, and Carney, Justices. [Borghesan, Justice, not participating.]

MAASSEN, Justice.

# I. INTRODUCTION

The State prevailed in a quiet title action brought against it by two landowners and was awarded approximately $205,000 in attorney's fees pursuant to the Alaska Civil Rule 82(b)(2) schedule. In an earlier appeal we affirmed the superior court's decision on the merits but determined that the court's findings on attorney's fees were inadequate for our review. We remanded the case for the court's express consideration of two factors relevant to whether a scheduled award should be reduced: Rule 82(b)(3)(I) (whether an award is "so onerous . . . that it would deter similarly situated litigants from the voluntary use of the courts") and Rule 82(b)(3)(J) ("the extent to which the fees incurred by the prevailing party suggest that they had been influenced by considerations apart from the case at bar").

The superior court expressly considered these factors on remand, made additional findings to explain its reasoning, and affirmed its earlier award. The landowners again appeal.

We conclude that the superior court did not err in its interpretation of factors (I) and (J), that it did not abuse its discretion by declining to rely on them to reduce the award, and that the award did not violate the landowners' constitutional rights of due process and access to the courts. We further conclude that the superior court did not abuse its discretion when it declined to hold proceedings on remand in abeyance while the landowners evaluated the significance of an anonymous letter accusing the State and its attorneys of litigation misconduct. We therefore affirm the judgment of the superior court.

# II. FACTS AND PROCEEDINGS

Kelly Dickson is trustee of the Kelly A. Dickson 2008 Trust (Dickson), and Donna DeFusco is her sister. Dickson and DeFusco own property near Big Lake, first

homesteaded by their father in 1958.[1] For decades other members of the public used or attempted to use several routes across Dickson and DeFusco's property for transportation and recreation.[2] The State claimed two public rights of way: the Historic Iditarod Trail, crossing the property via an RS 2477 right of way;[3] and Homestead Road, a prescriptive easement.[4] Dickson and DeFusco filed a quiet title action in 2012 seeking to invalidate these claims.[5]

The State vigorously contested the suit, and the litigation was hard-fought and complex. The superior court held a 27-day bench trial in 2016 at which the parties called 20 witnesses, five of them experts.[6] After trial the court ruled in favor of the State, finding that it had proven the existence of both the RS 2477 right of way for the Historic Iditarod Trail and the prescriptive easement for Homestead Road.[7] The court awarded

---

[1] *Dickson v. State, Dep't of Nat. Res.*, 433 P.3d 1075, 1078 (Alaska 2018).

[2] *Id.* at 1079-81.

[3] An RS 2477 right of way is a type of public easement created by federal law and based on historic use. *See id.* at 1082-83.

[4] *Id.* at 1078-81. A prescriptive easement depends on proof that "(1) the [claimant's] use was continuous and uninterrupted for [a] ten-year period . . . ; (2) the claimant acted as an owner and not merely as a person having the permission of the owner; and (3) the use was reasonably visible to the record owner." *Id.* at 1085 (alteration in original) (quoting *Interior Trails Pres. Coal. v. Swope*, 115 P.3d 527, 530 (Alaska 2005)).

[5] *Id.* at 1081.

[6] *Id.*

[7] *Id.* at 1081-82.

the State, as prevailing party, approximately $205,000 in attorney's fees.[8]

Dickson and DeFusco appealed.[9] In *Dickson v. State, Department of Natural Resources*, we affirmed the superior court's decision on the merits, but we remanded the attorney's fee award for further consideration.[10] Citing both "the sheer size of the award" and "the unusual evidence that the State selected and devoted resources to RS 2477 cases like this one that it hoped would be precedential," we directed the superior court on remand to make specific findings under Rule 82(b)(3)(I)[11] and (J)[12] to determine whether equitable factors justified a downward "variance of an award calculated pursuant to the formula of Rule 82(b)(2)."[13]

In April 2019 the superior court heard oral argument on the remanded attorney's fees issues. In June, before the court had issued any decision, it received an anonymous letter purporting to be from a State employee with inside knowledge about the Dickson and DeFusco case — specifically that the State and its attorneys put on a fraudulent defense to the quiet title action, knowing that the Historic Iditarod Trail "did

---

[8]     *Id.* at 1082.

[9]     *Id.*

[10]     *Id.* at 1089-90.

[11]     Rule 82(b)(3)(I) states that the court may vary an attorney's fee award upon consideration of "the extent to which a given fee award may be so onerous to the non-prevailing party that it would deter similarly situated litigants from the voluntary use of the courts."

[12]     Rule 82(b)(3)(J) states that the court may vary an attorney's fee award upon consideration of "the extent to which the fees incurred by the prevailing party suggest that they had been influenced by considerations apart from the case at bar, such as a desire to discourage claims by others against the prevailing party or its insurer."

[13]     *Dickson*, 433 P.3d at 1089-90.

not come close to the sisters['] land." The court shared the letter with the parties. The State responded by calling the letter a "hoax" and raising a number of questions about its authenticity based on the writer's apparent unfamiliarity with the agency procedures and personnel the letter purported to address. Dickson and DeFusco filed a motion asking the court to "hold [the attorney's fees] matter in abeyance and not issue any order or decision . . . for a period of 60 days . . . to allow for Plaintiffs to review and evaluate the statement and determine whether further action related to the statement and its content are necessary or appropriate." The court denied Dickson and DeFusco's motion to stay proceedings.

In late September the court issued its findings and conclusions specifically addressing Rule 82(b)(3)(I) and (J). It found that there were unique aspects of Dickson and DeFusco's case that made it more complex than the norm, meaning that other Alaskans considering quiet title actions against the State were unlikely to view the large attorney's fees award as a deterrent to filing suit. It also found that the State's response to the suit was "proportionate and relevant" and that the case resolved no factual or legal issues other than those specific to Dickson and DeFusco's property. The court rejected the contention that the State had selected this case "as a test case for any factual or legal precedent." Ultimately, it declined "to exercise its discretion to downward-adjust or eliminate the prevailing party's attorney's fees awarded pursuant to Civil Rule 82(b)(2)" and affirmed its earlier award "calculated pursuant to Civil Rule 82(b)(2)."

Dickson and DeFusco again appeal. They challenge the attorney's fees award on grounds that (1) the court erred in its interpretation of factors (I) and (J); (2) the court abused its discretion by failing to conclude that factors (I) and (J) warranted a downward adjustment; (3) the fees award violated their constitutional rights; and (4) the court abused its discretion by denying Dickson and DeFusco the opportunity to investigate the anonymous letter.

## III.    STANDARD OF REVIEW

"We review awards of attorney's fees for abuse of discretion. Such abuse exists if the award is 'arbitrary, capricious, manifestly unreasonable, or improperly motivated.' We interpret our civil rules and address constitutionality de novo, adopting the rule of law most persuasive in light of precedent, policy, and reason."[14] "Legal questions involved in exceptions to an award of attorney's fees are reviewed de novo, while exceptions that rely on factual findings are reviewed for clear error."[15]

"We review a denial of a motion to continue for 'abuse of discretion, determining whether a party has been deprived of a substantial right or seriously prejudiced by the lower court's ruling.' "[16]

## IV.    DISCUSSION

### A.    The Superior Court Did Not Err Or Abuse Its Discretion In Its Consideration Of Civil Rule 82(b)(3)(I) And (J).

Our discussion of the attorney's fees issue in *Dickson* recognized that the superior court's original award of attorney's fees — based on the Rule 82(b)(2)

---

[14]    *Rhodes v. Erion*, 189 P.3d 1051, 1053 (Alaska 2008) (quoting *Kellis v. Crites*, 20 P.3d 1112, 1113 (Alaska 2001)).

[15]    *Cizek v. Concerned Citizens of Eagle River Valley, Inc.*, 71 P.3d 845, 848-49 (Alaska 2003).

[16]    *Rowan B. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 361 P.3d 910, 912 (Alaska 2015) (quoting *Hannah B. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 289 P.3d 924, 930 (Alaska 2012)).

schedule[17] — was presumptively correct.[18] We also noted, however, that Dickson and DeFusco's opposition to the attorney's fees award had relied in part on two factors listed in Rule 82(b)(3) — factors that may justify a downward adjustment of an award — that the superior court had not specifically addressed.[19] The first factor — factor (I) — allows a variance if the award would otherwise be "so onerous to the non-prevailing party that it would deter similarly situated litigants from the voluntary use of the courts."[20] The second factor — factor (J) — allows a variance to "the extent to which the fees incurred by the prevailing party suggest that they had been influenced by considerations apart from the case at bar, such as a desire to discourage claims by others against the prevailing party."[21]

"Application of Rule 82(b)(3) factors is discretionary, not mandatory."[22] But we noted in *Dickson* "[t]wo unique circumstances of this case [that] persuade us that there may be compelling reasons to overcome the award's presumption of correctness":

> The first is the sheer size of the award; for most private parties an award of over $200,000 would have the deterrent

---

[17] Rule 82(b)(2) provides that "[i]n cases in which the prevailing party recovers no money judgment, the court shall award the prevailing party in a case which goes to trial 30 percent of the prevailing party's reasonable actual attorney's fees which were necessarily incurred."

[18] *Dickson*, 433 P.3d at 1089.

[19] *Id.* at 1089-90. Rule 82(b)(3) reads: "The court may vary an attorney's fee award calculated under subparagraph (b)(1) or (2) of this rule if, upon consideration of the factors listed below, the court determines a variation is warranted . . . ." A list of eleven factors, lettered (A)-(K), follows.

[20] Alaska R. Civ. P. 82(b)(3)(I).

[21] Alaska R. Civ. P. 82(b)(3)(J).

[22] *Rhodes v. Erion*, 189 P.3d 1051, 1055 (Alaska 2008).

effect addressed by Rule 82(b)(3)(I). The second is the unusual evidence that the State selected and devoted resources to RS 2477 cases like this one that it hoped would be precedential.[23] That is a perfectly reasonable strategy for any potential litigant facing a number of similar claims, but Rule 82(b)(3)(J) recognizes the potential unfairness of imposing the strategy's entire burden on the non-prevailing party in the test case.[24]

We directed the court on remand to give "express consideration [to] whether Rule 82(b)(3)(I) and (J) justify variance of an award calculated pursuant to the formula of Rule 82(b)(2)."[25] The superior court having reaffirmed its prior award, we now address Dickson and DeFusco's challenges to the court's expanded explanation of its reasoning.

### 1. The superior court did not require Dickson and DeFusco to propose a "reasonable" award.

Dickson and DeFusco argued in the superior court that an attorney's fees award of *any* size would unfairly burden them with the costs of the State's broad RS 2477 litigation strategy and deter other, similarly situated litigants. The superior court made note of this argument in its attorney's fees order, remarking that Dickson and DeFusco "suggest no alternative amount that would assist the court in striking an

---

[23]     This evidence consisted primarily of legislative testimony by an assistant attorney general that the State was "carefully pick[ing] strong R.S. 2477 claims to initially prosecute" in order to further its overall strategy of securing title to RS 2477 rights of way across the state. The presentation identified the Dickson and DeFusco case as one that was then being "actively litigated." Minutes, Joint House & Senate State Affairs Standing Comm., Hearing on Fed. Overreach: Activities of Dep't of Law and Nat. Res., 28th Leg., 1st Sess., 8:55-9:04 (Feb. 26, 2013) (testimony of Kent Sullivan, Assistant Att'y Gen.).

[24]     *Dickson,* 433 P.3d at 1089-90.

[25]     *Id.* at 1090.

appropriate balance" between Rule 82's compensatory purpose and factor (I)'s purpose of precluding awards that are likely to chill access to the courts. Dickson and DeFusco interpret the superior court's observation as imposing a duty on them to propose a "reasonable" amount other than zero, and they contend that the court "punish[ed] them for not suggesting an alternative."

We see no support for this argument in the attorney's fees order. The court began its analysis at $205,506.91, the amount it had earlier awarded based on the Rule 82(b)(2) schedule. The court went on to expressly consider whether this presumptively correct award should be modified because of the application of factors (I) and (J), as we had instructed it to do.[26] While clearly finding Dickson and DeFusco's no-award position unhelpful because of its failure to engage with Rule 82's compensatory purpose, the superior court conducted the analysis required by Rule 82 and our remand instructions. We reject the argument that it imposed a novel duty on Dickson and DeFusco and that it punished them for failing to perform that duty.

### 2. The superior court did not err in its interpretation of Rule 82(b)(3)(I).

The superior court's consideration of factor (I) required it to weigh "the extent to which a given fee award may be so onerous to the non-prevailing party that it would deter similarly situated litigants from the voluntary use of the courts."[27] Dickson and DeFusco argue that the superior court erred by adding "additional requirements" to factor (I). They contend first that the court added a requirement that the non-prevailing party "prove the issues alleged impacted other Alaskans" and that the court concluded, mistakenly, that the issues had no such impact.

---

[26] *Id.* at 1089-90.

[27] Alaska R. Civ. P. 82(b)(3)(I).

We read the court's analysis of factor (I) as concluding simply that "similarly situated litigants" — other Alaskans considering whether to bring quiet title actions against the State — would not be deterred from the voluntary use of the courts because they could not reasonably expect their cases to be as complex and expensive as Dickson and DeFusco's proved to be. Identifying its first task as determining "who similarly situated litigants are," the court noted a number of facts that differentiated Dickson and DeFusco's suit from the norm: their property "was used during the summer by one of the Plaintiffs, and [it] was potentially encumbered by two roads[,] the Historic Iditarod Trail and the Homestead Road." The court further noted that "[t]he characteristics of the claims and counterclaims . . . impacted only the Plaintiffs," and that "[a]lthough the Plaintiffs sought non-monetary relief, their claim held economic value based on its impact [on] their property."

The resulting litigation was also, in the court's experience, extraordinary. "The issues litigated were fact-intensive, and the manner in which they were contested required extensive historical and expert testimony." Pretrial preparation included "tens of thousands of pages of discovery and days of depositions." Trial itself was 27 days long, "the longest trial [the court had] conducted." The resulting findings of fact and conclusions of law were 57 pages long and "subject to a motion for reconsideration." The complexity of the case "required substantial time and resources" as recognized by both sides: Dickson and DeFusco themselves "spent approximately $800,000 in litigating the case." Considering all these facts, the court concluded that similarly situated litigants — that is, other "landowner[s] seeking to file a quiet title suit against the State" — would not "expect themselves or their opposing party to incur fees in the amount incurred in this case" and thus would not be deterred "from the voluntary use of

the courts."[28]  This analysis follows the express language of factor (I) and does not rely on an extra-textual "impact" requirement as Dickson and DeFusco contend.

Second, Dickson and DeFusco argue that the superior court impermissibly relied on the case's complexity to "offset" factor (I)'s application.  They argue that because "the complexity of the litigation" is identified as a separate Rule 82(b)(3) factor — factor (A) — it was error to consider it in the context of factor (I) when deciding whether an award would deter similarly situated litigants.  But we decline to read the Rule 82(b)(3) factors as so rigidly siloed.  The nature of the claims; the number, novelty, and significance of the issues; the extent of discovery; the need for expert testimony; and the money, time, and other resources necessary to pursue or defend the case — logically, all these elements that contribute to a case's complexity are also relevant when the court is considering whether litigants with similar claims are likely to be similarly burdened.  We see no error in the superior court's consideration of the case's complexity in the context of factor (I).

### 3. The court did not abuse its discretion in its application of Rule 82(b)(3)(I).

Dickson and DeFusco argue that the superior court not only erred in its interpretation of factor (I), it also abused its discretion in deciding that the factor did not justify a downward departure from the scheduled award.  They argue that the court failed to explain why it concluded that the award would not deter similarly situated litigants; that the court overlooked guiding precedent regarding the deterrent effect of attorney's fee awards; and that the court "dismissed the evidence presented in support of [the factor's application]."  None of these arguments convince us that the court abused its discretion.

---

[28]  Alaska R. Civ. P. 82(b)(3)(I).

Dickson and DeFusco's first assertion — that the court failed to explain why the award would not deter similarly situated litigants — is mistaken. As described above, the court did explain why, in its view, it was the case's unique aspects that resulted in the high attorney's fee award, meaning that the award was unlikely to act as a deterrent to other litigants who might be considering whether to bring quiet title actions against the State.

Second, none of the cases Dickson and DeFusco cite as guiding precedent mandate a different exercise of the superior court's discretion in this case. In *McGlothlin v. Municipality of Anchorage*, we concluded that a scheduled award of $4,242 — 20% of the reasonable fees incurred — was "not so onerous as to deter those who come forward in good faith with a complaint."[29] In *Boiko v. Kapolchok*, we held that the court did not abuse its discretion by awarding 15% of the fees incurred — less than the scheduled amount — as the award of $17,887 was "hardly an insignificant sum" and the court could reasonably have concluded that a larger award would have a "chilling effect" on similarly situated litigants.[30] In neither *McGlothlin* nor *Boiko* did we imply that larger fee awards made under completely different circumstances were necessarily suspect.[31]

---

[29]    991 P.2d 1273, 1280 (Alaska 1999).

[30]    426 P.3d 868, 878 (Alaska 2018).

[31]    In *State v. Jacob*, 214 P.3d 353 (Alaska 2009), also cited by Dickson and DeFusco, we affirmed the court's award of enhanced fees by reference to factors (H) and (F); we did not address factor (I), although the trial court had relied on it in part. *Id.* at 358-62. We also affirmed an award of enhanced fees in *Ware v. Ware*, 161 P.3d 1188, 1198-1200 (Alaska 2007); Dickson and DeFusco cite only the dissent. The *Ware* dissent argued that the superior court should revisit the issue of whether the award, based in part on the litigation's complexity, would deter other self-represented litigants; the dissent questioned whether complications due to unrepresented litigants' lack of legal training and experience could fairly be used to justify an enhanced award. *Id.* at 1204 (Fabe, J.,
(continued...)

Finally, Dickson and DeFusco contend that the superior court "abused its discretion when it dismissed the evidence presented in support of [the] application of" factor (I). They do not point to any particular evidence the court overlooked; in fact, the only evidence submitted with their fees memorandum on remand, other than their attorney's affidavit attesting to the amount of their own fees and costs, related to factor (J) and the argument that the State litigated the case vigorously as a test case. Their vague reference to evidence appears to simply restate their argument that the court should have found from the award's size alone that it was so onerous as to deter other good faith litigants. But as described above, the court placed the award's size in the factual context of the case's significance and complexity. We cannot conclude that the court abused its discretion by failing to consider relevant evidence.

### 4. The superior court did not err in its interpretation of Rule 82(b)(3)(J).

The superior court's consideration of factor (J) on remand required it to weigh "the extent to which the fees incurred by the prevailing party suggest that they had been influenced by considerations apart from the case at bar, such as a desire to discourage claims by others against the prevailing party or its insurers."[32] When remanding for the court's express consideration of this factor, we noted "the unusual evidence that the State selected and devoted resources to RS 2477 cases like this one that it hoped would be precedential."[33] The superior court on remand recognized this evidence, noting "that the State was/is interested in settling R.S. 2477 disputes, that the

---

[31] (...continued) dissenting). These concerns are not implicated here.

[32] Alaska R. Civ. P. 82(b)(3)(J).

[33] *Dickson v. State, Dep't of Nat. Res.*, 433 P.3d 1075, 1089 (Alaska 2018).

State considered this case to fall within that category of cases, and that the State wanted to litigate this case thoroughly and competently to avoid losing its claim to what it believed to be a true R.S. 2477 [right of way]." But the court identified several reasons why it would "decline to exercise its discretion to downward adjust the prevailing party attorney's fee award under" factor (J).

First, the court stated that Dickson and DeFusco's "case did not answer, or purport to answer, any factual or legal questions applicable to overarching R.S. 2477 issues" but rather only "the presence of an R.S. 2477 [right of way] on the plot of land in question." Second, the court stated that although it was possible its voluminous findings of fact and conclusions of law "could . . . be used to give the State bargaining power against neighboring landowners in or outside of court," there was nothing in those 57 pages of findings that "obviously addresses the location of the R.S. 2477 [right of way] as it relates to any neighboring properties." Third, the court observed that the case did not set any legal precedents, requiring only "an application of existing law to the facts of this case." Fourth, the court was not convinced that "the State would have litigated this case" if Dickson and DeFusco had not "initiated it"; it further found that "[t]he State's response [to the quiet title action] was a proportionate and relevant defense," which Dickson and DeFusco could have reasonably expected "given the [parties'] history of communication" about "this tract of land." Finally, the court found it "noteworthy that the State's extracurricular discussion of R.S. 2477s only mentioned one of the issues that were contested in this case" — the Historic Iditarod Trail — whereas the case also involved the status of Homestead Road. Based on these considerations, the court concluded that "the extra-record evidence regarding the State's interest in litigating R.S. 2477 claims" did not indicate "that this case was selected as a

test case for any factual or legal precedent," and a downward adjustment under factor (J) was therefore not appropriate.

Dickson and DeFusco argue that this analysis impermissibly added four requirements to factor (J) that are not articulated in the rule. They argue that the court required them to show the following: (1) that they "bore the entire burden, or . . . a disproportionate [amount of the] burden, of the State's R.S. 2477 litigation strategy"; (2) that their case presented "an issue of first impression"; (3) "that the State was using the case to 'answer . . . factual or legal questions applicable to overarching R.S. 2477 issues' "; and (4) "that the State would have litigated this case whether or not [Dickson and DeFusco had] initiated it."

This argument mischaracterizes the superior court's reasoning. The court identified none of these factors as "requirements" for a downward adjustment under factor (J); rather, it identified them as relevant considerations, which, in combination, persuaded it that a downward adjustment was not required. We see no legal error in the court's interpretation of factor (J).

**5.    The superior court did not abuse its discretion in its application of Rule 82(b)(3)(J).**

As with factor (I), Dickson and DeFusco argue that the superior court not only committed legal error by adding additional hurdles to factor (J)'s application but also abused its discretion by declining to rely on the factor for a downward adjustment of the scheduled award. The abuse of discretion, they contend, was in the court's dismissal of the evidence they submitted to support factor (J)'s application: specifically (1) the statements by the State's representative to the Alaska Legislature about its pursuit of the Dickson and DeFusco case as part of its overall strategy for securing RS 2477 rights of way; and (2) the State's representations at trial that it hoped to secure rights of way for the benefit of the dog-mushing community. This evidence, Dickson and

DeFusco assert, made it clear that the State's vigorous defense of the quiet title case was "influenced by considerations apart from the case at bar," making a downward adjustment under factor (J) appropriate.

The superior court directly addressed the evidence relevant to factor (J), as we had instructed it to do. As described above, the court found it significant that Dickson and DeFusco's case resolved RS 2477 issues only with regard to their property, without deciding any "issues of first impression or law-changing questions." The court also noted the lack of "evidence in the record that the State would have litigated this case whether or not the Plaintiffs initiated it," finding further that "[t]he State's response was a proportionate and relevant defense to the action the Plaintiffs filed based on the burden it carried." In sum, in the superior court's view, the State did not pick a test case but rather had litigation thrust upon it, whereupon it acted appropriately and proportionately in defense of the State's interests.

We thus reject Dickson and DeFusco's argument that the superior court abused its discretion by "disregard[ing]" the evidence relevant to factor (J). The court's view of the evidence is supported by the record and not clearly erroneous. And even assuming that the vigor of the State's defense was to *some* degree "influenced by considerations apart from the case at bar" does not end the inquiry, as whether to apply a downward adjustment is still a matter for the superior court's discretion.[34] We cannot say that that discretion was abused.

B.     **The Attorney's Fee Award Did Not Violate Dickson's And DeFusco's Constitutional Rights Of Due Process And Equal Access To The Courts.**

Dickson and DeFusco also make a constitutional argument. They argue that because Rules 82(b)(3)(I) and (J) are specifically intended to ensure that litigants are

---

[34]     *Rhodes v. Erion*, 189 P.3d 1051, 1053 (Alaska 2008).

-16-                                    **7534**

not deterred from voluntary use of the courts, a court's failure to properly apply those subsections of the rule necessarily results in a violation of the rights of due process and equal access to the courts. They argue that the "sheer size" of the attorney's fees award in this case served to "chill access to the [c]ourts" and "discourage claims."

We apply our independent judgment to this constitutional issue.[35] Dickson and DeFusco's argument that factors (I) and (J) are intended to address concerns about due process and access to the courts is correct.[36] We recognize that " 'financially ruinous' fee awards against good faith civil litigants could deter access to the courts."[37] And Rule 82 addresses this concern "by allowing courts to consider 'the extent to which a given fee award may be so onerous to the non-prevailing party that it would deter similarly situated litigants from the voluntary use of the courts.' "[38] However, because we conclude that the superior court expressly considered these issues in the proper framework of factors (I) and (J), we must also conclude that Dickson's and DeFusco's rights of due process and access to the courts were adequately protected.[39]

---

[35]    *Id.*

[36]    *Id.* at 1054-55; *see also* Susanne Di Pietro & Teresa W. Carns, *Alaska's English Rule: Attorney's Fee Shifting in Civil Cases*, 13 ALASKA L. REV. 33, 45 (1996) (describing adoption of Rule 82 departure factors).

[37]    *Reid v. Williams*, 964 P.2d 453, 462 (Alaska 1998). We note in this regard that Dickson and DeFusco do not rely on their own financial circumstances to argue that an award may be so onerous as to be unconstitutional.

[38]    *Thomas v. State*, 377 P.3d 939, 951 (Alaska 2016) (quoting Alaska R. Civ. P. 82(b)(3)(I)).

[39]    *See State v. Native Vill. of Nunapitchuk*, 156 P.3d 389, 406 (Alaska 2007) (holding that Rule 82 does not violate due process by denying access to the courts because Rule 82(b)(3)(I) allows trial courts to consider "reduc[ing] awards that would
(continued...)

**C.     The Superior Court Did Not Abuse Its Discretion When It Denied Dickson And DeFusco's Motion To Hold The Case In Abeyance.**

Dickson and DeFusco argue that the court violated their due process rights by denying their motion to hold the case in abeyance while they investigated the anonymous letter accusing the State of misconduct in the litigation of the case; they argue in the alternative that the court abused its discretion when it failed to consider the letter's contents when ruling on attorney's fees. They assert that the letter's allegations are clearly relevant both to the application of Rules 82(b)(3)(I) and (J) and to the underlying substantive issues of property law.

"We review a denial of a motion to continue for 'abuse of discretion, determining whether a party has been deprived of a substantial right or seriously prejudiced by the lower court's ruling.' "[40] We see no abuse of discretion in the superior court refusal to hold the case in abeyance based on the anonymous letter. First, being both anonymous and largely hearsay, the letter had no apparent evidentiary value; Dickson and DeFusco had no substantial right to have this one questionable piece of evidence shape the superior court's decision. Second, Dickson and DeFusco do not explain how they were prejudiced by the court's denial of their motion. Their specific request was for a 60-day continuance "to allow [them] to review and evaluate the statement and determine whether further action related to the statement and its content [is] necessary or appropriate." Although the court denied their motion about two weeks later, it did not issue its written attorney's fees decision for months — ultimately over 90

---

[39]     (...continued)
otherwise be so onerous to the losing party as to deter similarly situated litigants").

[40]     *Rowan B. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 361 P.3d 910, 912 (Alaska 2015) (quoting *Hannah B. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 289 P.3d 924, 930 (Alaska 2012)).

days from the date Dickson and DeFusco asked for a 60-day continuance. They had not requested any formal discovery in their motion, nor do they now suggest any informal avenues of inquiry that were foreclosed to them by the court's order. If their "review and evaluat[ion]" of the anonymous letter led them to conclude that it had evidentiary value, they could have used it as the basis of an Alaska Civil Rule 60(b) motion to set aside the judgment because of newly discovered evidence or fraud.[41]

In short, the court's order did not foreclose the only action Dickson and DeFusco contemplated — "review and evaluat[ion]" — and did not preclude their use of the letter as newly discovered evidence in the event that their review and evaluation suggested that course. Because the court's denial of their request to hold the case in abeyance did not deprive them of a substantial right or seriously prejudice them, it was not an abuse of discretion.

## V.    CONCLUSION

The superior court's attorney's fee award and its order denying the motion to hold the case in abeyance are AFFIRMED.

---

[41]    *See* Alaska R. Civ. P. 60(b)(2) (allowing relief from judgment based on "newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b)"); Rule 60(b)(3) (allowing relief from judgment based on "fraud . . . , misrepresentation, or other misconduct of an adverse party").