*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@akcourts.gov.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | |
|---|---|
| DANIEL S. ANDERSON, ALISON ANDERSON, STEPHEN T. LEWIS, GERALD ROBERT LEE, TERENCE S. VALENTINE, SALLY J. VALENTINE, EDWARD G. WILSON, SUZANNE HAMMOND WILSON, JAMES P. HOEFFLER and KARYN K. WARNER, as Trustees for and on Behalf of the Hoeffler Family Trust, DON WARD, GALEN GAUNT, CLAUDIA E. HOVERSTEN, as Trustee for and on Behalf of the Hoversten Revocable Trust, MATTHEW F. WARNICK, MELANIE WARNICK, HERMAN J. SCHLIESING and MYRA K. SCHLIESING, as Trustees for and on Behalf of the Schliesing Alaska Community Property Trust, MARTIN J. BONIEK for Copper Valley Air Service, LLC, as its Managing Member, and CLARE JAEGER, | Supreme Court Nos. S-18145/S-18425<br><br>Superior Court No. 3PA-18-01020 CI<br><br>O P I N I O N<br><br>No. 7714 – August 30, 2024 |
|        Appellants, | |
|      v. | |
| KIRK WILSON and JULIE WILSON, | |
|        Appellees. | |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Palmer, Kari Kristiansen, Judge.

Appearances: G. R. Eschbacher and David Donley, Eschbacher & Eschbacher, PC, Anchorage, for Appellants. Phillip Paul Weidner and Lisa Rosano, Phillip Paul Weidner & Associates, APC, Anchorage, for Appellees.

Before: Maassen, Chief Justice, and Carney, Borghesan, Henderson, and Pate, Justices.

CARNEY, Justice.

## I.    INTRODUCTION

These appeals, one regarding the trial's outcome and the other the attorney's fee award, arise out of a property dispute between neighbors on remote parcels near a lake. A group of landowners sued their neighbors to the south, arguing that the southern neighbors wrongly blocked access to the northern properties from a highway. The northern landowners argued that a public easement had been established over the southern property. The court concluded that the northern property owners had been granted only a private easement over the land. It determined that the southern property owners were the prevailing party and awarded them attorney's fees. The northern landowners appeal both the court's easement determination and attorney's fee award. We affirm the court's easement decision, but we vacate and remand the fee award for further consideration.

## II.   FACTS AND PROCEEDINGS

### A.    Facts

All parties in this case own property adjacent to Tolsona Lake, north of the Glenn Highway. Tract B-1, the property at the core of this dispute, is owned by the Wilsons. The appellants in this case live north of the Wilsons, along the lake. We collectively refer to the northern landowners as the Andersons. The graphic below illustrates the approximate location of the parties' properties, the lake, and the road relative to one another.



1300

Oscar Sylvester homesteaded near what is now the Wilson property in 1946. In 1947 Sylvester filed a notice of location describing the property, and in 1952 he applied for a land patent. He amended his patent application in 1954, and he was granted a patent for the property in 1955. A road of some kind was constructed across Sylvester's property, and it is this road the northern neighbors argue is a public easement giving access to their properties from the highway.

Chester and Bessie Bunsek purchased the Sylvester property in 1962. They subdivided and platted the property several times. In 1978 the Bunseks created

the R & R Subdivision on an adjoining parcel by plat, which "dedicate[d] all streets to private use." Then in 1989 the Bunseks platted the Tolsona Lake Subdivision, which includes Tract B-1.

In 2000 the Wilsons came into possession of the land upon the death of Bessie Bunsek. The Wilsons converted a building on the property into their private home and operated a public lodge on the property. In 2005 the Wilsons further subdivided and platted the property, creating the Bunsek Estates Subdivision.

The Wilsons and their neighbors to the north previously litigated access over the Wilsons' property. In 2005 the neighbors sued to establish a public easement similar to the one they seek in this litigation over the Wilson property. That dispute was settled in 2007 with the establishment of a private easement. The settlement granted the northern landowners access over a route that is near the route at issue in this case. That easement runs with the land, so later purchasers of the northern properties benefit from it alongside owners at the time of the settlement.

In 2017 the Wilsons briefly blocked access over their property after perceived excessive use of the road by unauthorized individuals, prompting this litigation.

### B. Proceedings

In January 2018 the Andersons filed a complaint seeking a permanent injunction, damages, and recognition of a public easement across the Wilson property to provide access to their own properties to the north. They alleged they possessed public easements by patent and subdivision agreement, by prescription, and under Revised Statute 2477 (RS 2477).[1] They also alleged they had an easement by estoppel over a road they helped the Wilsons construct with the understanding it would be public.

---

[1] RS 2477 was part of the Lode Mining Act of 1866 and provided for self-executing public rights of way. *See Dickson v. State, Dep't of Nat. Res.*, 433 P.3d 1075, 1082-83 (Alaska 2018).

A later filing indicated the Andersons sought a private easement as an alternative to a public easement. The Wilsons largely denied the allegations and maintained the road "is and always has been for permissive use only."

The superior court held a 12-day bench trial in February and March of 2021. The Andersons called several residents and business owners to describe how they travelled through the area in the past. The Andersons also called an expert witness, and Daniel Anderson testified on his own behalf. Daniel Anderson testified that when he purchased his property, Kirk Wilson "assured me that there [were] no restrictions on coming, going . . . I understood [the road] to be public." He also testified that, to his knowledge, fuel deliveries had always been made to residents over this road. A fuel delivery driver who has served the area since the 1990s testified that he used the road to make monthly deliveries to the residents and air taxi businesses in the area. He noted that he never sought permission to use the road, even after Wilson posted signs requesting that drivers "check in with the lodge."

Clare Jaeger, whose parents settled in the area in 1946, also testified. She explained that she had always been aware of a trail that went through the Bunseks' property, and testified as to her own use and use by others of roads to travel to and from the Wilson property. Jaeger also described an incident in which Kirk Wilson yelled at her as she drove down a road in the area, and explained that she later found a copy of the 2007 settlement in her mailbox with a note to use the road described in the settlement agreement — not the one she had been driving on. Jaeger testified that she continued to use that road.

The Wilsons called three witnesses, including their own expert. Kirk Wilson testified on his own behalf. He testified that he has historically allowed access over his property for his neighbors to the north, customers of the air taxi businesses that several of his neighbors operate, and fuel truck deliveries. He noted that the road crossing his property has been marked with signs since 1981. Two signs "in front of" and "behind" a lodge adjacent to the road indicate the road is for "residents only" and

set a 10 mile per hour speed limit. A sign was also posted near the road requesting that visitors check in at the lodge. But Wilson explained he grew concerned at the extent to which "strangers" were crossing his property, leading him to place a cable across the road.

Wilson also described antagonism by several neighbors in the time before and after placing the cable. He testified that Clare Jaeger would drive on the road at an excessive speed when his young grandchildren were present and that she would not stop doing so. Jaeger was not a party to the 2007 settlement granting a private easement over this road.

Wilson also described an incident in which Gerald Lee and two other neighbors yelled obscenities and made obscene gestures towards Wilson and his daughter after the start of litigation. Wilson also testified that he has always been willing to permit "private ingress and egress" for landowners in the area's subdivisions. The Wilsons maintained the position at trial that they continued to respect the private easement from 2007 to allow neighbors to cross his land to reach their properties along the lake.

The court issued its verdict, findings, and conclusions of law in June 2021. Aside from several issues not on appeal, the court found for the Wilsons. It concluded there were no public easements and that the Wilsons had granted the Anderson property owners and their "clients, guests, [and] invitees" a private easement — "consensual permissive private use easement rights."[2]

The court found there was no public easement by necessity. It also determined that there was no RS 2477 right of way or any public roads dedicated or

---

[2] With a few handwritten exceptions, the court adopted the Wilsons' proposed verdict form. It used the term "consensual permissive private use easement rights" to describe the easement the Wilsons had established on their land. For clarity we refer to it simply as a "private easement."

reserved in the original or subsequent plats. The superior court also concluded that, because the Andersons had crossed the Wilson property with permission, their actions did not establish prescriptive easements. Finally, the court awarded the Wilsons 75% of their attorney's fees.

The Andersons appeal the superior court's decisions about easements and its award of attorney's fees.

## III. STANDARD OF REVIEW

"A superior court's determination of whether an easement . . . exists is based on findings of fact and legal conclusions. We do not disturb a trial court's findings of fact unless they are clearly erroneous. We review the application of law to facts de novo."[3]

We review the superior court's evidentiary rulings, including the exclusion of evidence, for an abuse of discretion.[4] "Errors in the admission or exclusion of evidence warrant reversal only if necessary to ensure 'substantial justice.' "[5]

The superior court has "broad discretion in awarding attorney's fees," and "this court will not find an abuse of discretion absent a showing that the award was arbitrary, capricious, manifestly unreasonable, or stemmed from improper motive."[6]

## IV. DISCUSSION

The Andersons raise several arguments on appeal. They challenge the superior court's holding that no public easement exists through the Wilsons' property

---

[3]     *HP Ltd. P'ship v. Kenai River Airpark, LLC*, 270 P.3d 719, 726 (Alaska 2012) (internal citations omitted).

[4]     *Guilford v. Weidner Inv. Servs., Inc.*, 522 P.3d 1085, 1093 (Alaska 2023).

[5]     *Id.* (quoting *Luther v. Lander*, 373 P.3d 495, 499 (Alaska 2016)).

[6]     *Oakly Enters. v. NPI, LLC*, 354 P.3d 1073, 1079 (Alaska 2015) (quoting *United Servs. Auto. Ass'n v. Pruitt ex rel. Pruitt*, 38 P.3d 528, 531 (Alaska 2001)).

and assert that the superior court made evidentiary errors at trial. The Andersons also challenge the court's award of attorney's fees to the Wilsons.

The Andersons make three broad arguments attempting to establish public access over the Wilsons' property. The first is that an RS 2477 right of way was established by public use of a "bulldozed" or "gravel" road. The second is that patents and plats for the area officially established a public road.[7] The third is that a public easement exists under a common law theory of necessity, prescription, or estoppel. We do not find these arguments persuasive.

## A. The Superior Court Did Not Err By Concluding That There Is No RS 2477 Right Of Way Through The Wilsons' Property.

Section 8 of the Lode Mining Act of 1866[8] provided for the self-executing preservation of rights of way over unreserved federal public lands if "a public highway was established across public land in accordance with the law of Alaska."[9] As we have explained:

> To effect the grant of a right-of-way, either the public or the appropriate state authorities must take positive action. Specifically, the public must use the land "for such a period of time and under such conditions as to prove that the grant has been accepted," or appropriate public authorities of the

---

[7] The Andersons also argue that a right of way was dedicated by the Secretary of the Interior's Secretarial Order No. 2665 and Public Land Order 601. This argument was not raised in the superior court, and we decline to address it. *See Jones v. Jones*, 505 P.3d 224, 233 (Alaska 2022).

[8] Lode Mining Act of July 26, 1866, ch. 262, § 8, 14 Stat. 251, 253 (codified as 43 U.S.C. § 932 (1925), Revised Statute 2477), *repealed by* Federal Land Policy and Management Act of 1976, Pub. L. No. 94-579, § 706(a), 90 Stat. 2743, 2787 (1976).

[9] *Dickson v. State, Dep't of Nat. Res.*, 433 P.3d 1075, 1082-83 (Alaska 2018). Section 8 was repealed in 1976, but the authority to designate new RS 2477 rights of way in Alaska ended in January 1969 when the Secretary of the Interior withdrew all public lands in the state not already reserved. *Ahtna, Inc. v. State, Dep't of Nat. Res.*, 520 P.3d 131, 134 (Alaska 2022). Existing rights of way were left intact. *Id.*

state must act in a way that clearly manifests their intention to accept the grant.[10]

Routes established in this way are RS 2477 rights of way.[11] The public can only accept an RS 2477 right of way by affirmative acts, such as by using the route before the underlying land is "withdrawn from the public domain."[12]

The parties disagreed at trial as to the date of Oscar Sylvester's withdrawal of his property from the public domain. The Wilsons contended this withdrawal occurred in 1947, when Sylvester filed a notice of location, or 1952, when Sylvester first applied for a land patent.[13] The Andersons counter that withdrawal did not occur until 1954, when they argue Sylvester amended his patent application. But whether the land was withdrawn in 1947, 1952, or 1954, the superior court did not clearly err when it found no clear and convincing evidence of public use of the road prior to any potential date of withdrawal proffered by the parties.

The Andersons make several factual assertions they argue should have compelled the superior court to find that the public accepted the alleged RS 2477 right of way before its withdrawal. The Andersons point to the testimony of two of their witnesses at trial which they claim shows "Native Alaskan trails and activity prior to 1950." Their expert witness, Allen Minish, testified that an aerial photograph from the 1940s shows "trails leading up towards [a lake north of the property] over this area," and there was a "Native allotment that's up there." Minish concluded that, given the existence of trails and the "Native allotment," there must have been public use of those trails, which the Andersons argue shows public acceptance of this route as an RS 2477

---

**10** *Price v. Eastham*, 75 P.3d 1051, 1055 (Alaska 2003) (internal citations omitted) (quoting *Dillingham Com. Co. v. City of Dillingham*, 705 P.2d 410, 413-14 (Alaska 1985)).

**11** *Id.*

**12** *Dillingham*, 705 P.3d at 414.

**13** On appeal, the Wilsons now argue the timing of withdrawal is irrelevant.

right of way. The Andersons also note that another of their witnesses, Clare Jaeger, testified about the presence of a family to the north of the Sylvester homestead and to the establishment of lodges in that area at least since the "late 1950s."

The Andersons presented evidence of a "bulldozed" or "gravel" road which they argue shows a pre-withdrawal path. A 1954 survey shows a "gravel" and "bulldozed" road that appeared to start beyond the property's southern border and may or may not have run past its northern border. A 1958 surveyor referred to a "trail," and a 1967 survey document denotes a "dirt road" starting south of the property and seemingly ending at the property's northern border. A 1978 survey of the plats north of the property indicates a "Centerline 30' Access Road" connected those plats to the adjoining property.

We see no error in the superior court's conclusion that this evidence did not establish an RS 2477 right of way over the Wilson property. Though the court heard testimony regarding the existence of a "Native allotment," lodges, and a family living north of the Sylvester property, the mere presence of others in the area or operating a business there does not, on its own, show that a particular trail was used by the public before withdrawal. And as the superior court noted, the "bulldozed road" the Andersons assert shows use by the public is wholly consistent with Oscar Sylvester clearing the road on his own property to cross the site for private purposes. Only in 1978 is the first reference to an "access road" made in a survey of area plats, but that is far too late in time to reflect the existence of a public route by 1954. The Andersons also claim that an annotated 1950 aerial image shows a trail indicating public use, but the "faint but clearly present line" is drawn in the same style as property boundaries on the annotated

image, and appears to also simply mark a property boundary. And the superior court sustained an objection to the use of the annotations as hearsay.[14]

"[I]t is the function of the trial court, not of this court, to judge witnesses' credibility and weigh conflicting evidence."[15] And we will not disturb the superior court's findings of fact unless they are clearly erroneous.[16] We see no clear error in the superior court's conclusion that the plaintiffs had not proved by clear and convincing evidence that the public accepted this route before the land's withdrawal, and we affirm its finding that no RS 2477 right of way runs over the Wilsons' property.

The Andersons also claim that the superior court abused its discretion when it excluded as hearsay Claire Jaeger's testimony that her family had been using the trail to cross what is now the Wilson property since they moved to the area in 1946. But this argument is inadequately briefed — it is contained in a single conclusory sentence, and it fails to explain the superior court's alleged error in excluding this testimony.[17] Accordingly, we affirm the superior court's exclusion of this testimony.

### B. The Superior Court Did Not Clearly Err By Concluding That No Easement Through The Wilsons' Property Was "Accepted By Plat."

The Bunseks drafted plat 89-9 for their subdivision in 1989, and included a single road running north and south through the property. The Andersons argue that the road shown on the plat was dedicated by the plat and is therefore public. Alaska Statute 40.15.030 directs that "[w]hen an area is subdivided and a plat of the subdivision

---

[14]    The Andersons also argue that a trail similar to their proposed route can be seen on a 1966 Bureau of Land Management document, but 1966 is also well after any date when either side asserts Sylvester's property was "withdrawn from the public domain." *Dillingham*, 705 P.3d at 414.

[15]    *Fink v. Mun. of Anchorage*, 379 P.3d 183, 192 (Alaska 2016).

[16]    *HP Ltd. P'ship v. Kenai River Airpark, LLC*, 270 P.3d 719, 726 (Alaska 2012).

[17]    *See Wagner v. Wagner*, 218 P.3d 669, 678 (Alaska 2009).

is approved, filed, and recorded, all streets . . . on the plat are considered to be dedicated to public use."

At trial the Wilsons pointed out that there was no platting authority for the area until 1998. The Andersons' expert conceded this point. However, the Andersons argue on appeal that, even if no such authority existed in 1989 when the subdivision was platted, the State Department of Natural Resources would "unquestionably" have made all rights of way marked on a plat public. They further contend that a court can find "constructive" acceptance of a platted right of way, which would also make that route public.

The plain language of AS 40.15.030 requires affirmative state approval, and so does our case law. In *State v. Fairbanks Lodge No. 1392, Loyal Order of Moose*, we were confronted by a dedication that appeared in a recorded plat map but was never submitted to a platting authority or approved by the relevant municipal entities.[18] The State framed this as merely a "formal defect[]," but we disagreed and concluded the unapproved plat map — though filed with the recorder's office — was "insufficient to constitute a dedication."[19]

Furthermore, we have rejected the premise that a "platting authority would have required [a trail to] be dedicated as a public road," calling this "by no means clear."[20] And as the Wilsons' attorney highlighted at trial, a plat of the Bunsek's adjacent subdivision showing this same road expressly "dedicate[d] all streets to private use." Although the Andersons' expert believed this "conflict[ed] with how [Bunsek was] presenting it as a commercial property," there is only one road on the plat that could be dedicated to private use in the first place.

---

[18]     633 P.2d 1378, 1379-80 (Alaska 1981).

[19]     *Id.*

[20]     *Laughlin v. Everhart*, 678 P.2d 926, 931 (Alaska 1984).

The superior court was entitled to credit the Wilsons' expert's uncontroverted testimony that there was no platting authority in the area until the late 1990s. The superior court was likewise free to give less weight to the Andersons' expert's opinion that the plat's dedication of the road as "private" conflicted with the parcels' presentation as "commercial property." The superior court's conclusion that this road was not "accepted by plat" and therefore not public was not clearly erroneous.

### C. The Superior Court Did Not Err By Concluding No Common Law Public Easements Existed.

The Andersons next assert that they have acquired public easements over the Wilsons' property by prescription, implication, necessity, or estoppel. We address each type of easement in turn, and conclude the superior court did not err by finding no common law public easements existed over the Wilsons' property.

### 1. Prescriptive easement

Whether the Andersons acquired a public easement by prescription depends largely on whether their use of the road is best described as hostile or permissive. We have summarized our test for hostility in this way:

> The hostility requirement . . . requires that the "user must have acted as if . . . claiming a permanent right to the easement." The test is objective and seeks to determine "whether the possessor acted toward the land as if [the possessor] owned it, without the permission of one with legal authority to give possession." When one uses another's property, there is a presumption that one does so with "the rightful owner's permission and in subordination to [the owner's] title." "This presumption is overcome . . . by a showing that such use of another's land . . . was openly adverse to the owner's interest . . . ." Evidence of a landowner's acquiescence is not enough to extinguish an adverse user's claim; the question is whether the landowner

intended to permit the use or merely acquiesced in that use.[21]

In its findings and conclusions, the superior court found that the public's use of the Wilsons' property was permissive and therefore "not hostile." It credited Kirk Wilson's testimony over that of the Andersons' witnesses. It found "there is no specific testimony of any crossings by any [persons other than Anderson, Lee, and Jaeger] in a hostile or quarrelsome fashion, to allow a prescriptive private or public easement." It noted that the Andersons "have only shown that they have *recently* engaged in hostile activities against the Wilsons" and emphasized that, while "the Wilson[s] have permitted commercial use, they have strictly limited its nature and scope." The superior court therefore concluded that, though the Andersons are "trying to convert [the] Wilsons' access road into a veritable superhighway, . . . [t]he Wilsons have not tolerated that conduct[,] . . . have consistently taken measures against the intruders[,] . . . [and] have actively asserted their property rights."

Whether the Andersons' use was sufficiently hostile is generally a factual finding reviewed for clear error.[22] The record includes evidence that could have led the court to conclude that the use was hostile and to determine there was an easement. Gerald Lee testified that he had been inviting members of the public to use the road since the 1990s — acting as if he owned it. And Kirk Wilson conceded that he did not generally restrict travel by people visiting businesses in the area — an action that resembles acquiescence. For example, the fuel delivery driver testified that, despite

---

[21] *Kenai River Airpark, LLC*, 270 P.3d at 732-33 (fifth and sixth alterations in original) (citing *Swift v. Kniffen*, 706 P.2d 296, 303 (Alaska 1985); then quoting *McDonald v. Harris*, 978 P.2d 81, 84 (Alaska 1999); and then quoting *Swift*, 706 P.2d at 304).

[22] *Cowan v. Yeisley*, 255 P.3d 966, 971, 974 (Alaska 2011); *Swift*, 706 P.2d at 301 (treating issue of whether landowner "engaged in 'sufficient activities to negate any presumed intent to dedicate to the public' " as "factual issue" reviewed for clear error).

signage requesting visitors check in at the lodge, he never did so and was never asked to. The record also indicates that Wilson tried to reroute travelers away from his home as early as 2002, suggesting that adverse use dates back over 20 years.

But Wilson's testimony, which the trial court credited, conflicted with much of this evidence. Wilson testified that he and his predecessors had long permitted residents and customers to use the road. We have previously noted that "when possession has begun permissively, it cannot become hostile until the presumption of permissive use is rebutted 'by proof of a distinct and positive assertion of a right hostile to the owner of the property.' "[23] Lee's testimony that he had invited the public onto his property by way of the Wilson property for nearly 30 years could support the Andersons' argument that a prescriptive easement had been created. But Wilson described a change in the number and manner of people trespassing on his property concentrated around the start of litigation. He testified that Jaeger was the only person he had "seen go through [his property] in recent years" even though he also testified that the Andersons continued to trespass after the court issued an injunction to stop it.[24] Wilson further testified that he had posted signs stating the road was for residents only since 1981.

The superior court, faced with conflicting evidence, weighed the credibility of the witnesses. "[I]t is the function of the trial court, not of this court, to judge witnesses' credibility and to weigh conflicting evidence."[25] The superior court

---

[23]     *Cowan*, 255 P.3d at 974 (quoting *City of Anchorage v. Nesbett*, 530 P.2d 1324, 1329 (Alaska 1975)). We have also noted that "the fact that one owner has acquiesced in a use is not at all inconsistent with the possibility that an earlier owner permitted it." *Dault v. Shaw*, 322 P.3d 84, 95 (Alaska 2013).

[24]     Wilson also described in detail Jaeger's particularly hostile and dangerous behavior when she drove through his property.

[25]     *Fink v. Mun. of Anchorage*, 379 P.3d 183, 192 (Alaska 2016).

did not clearly err by crediting Wilson's testimony over the Andersons'. We affirm its conclusion that there is no prescriptive easement over the Wilson property.

### 2. Easement by implication

An easement by implication forms if "there is '(1) a quasi-easement at the time of contract of sale or conveyance, (2) which is apparent, (3) reasonably necessary for the enjoyment of the land retained or the land conveyed, and (4) continuous in nature.' "[26] The parties focus their attention on the third criterion: whether a public road is "reasonably necessary" for the Andersons to enjoy their property. The Wilsons argue that the Andersons do not need an easement because their property is not landlocked and because they have access from the surface of Tolsona Lake as well as the "Crosswind Trail" or "Old Military Trail."[27] The superior court agreed, but the Andersons respond that the properties are landlocked and that the mostly unusable military trail was built after an easement had been established.

Necessity is determined by "whether [an] easement is reasonably necessary for the beneficial enjoyment of the property as it existed when the severance was made."[28] This standard is less demanding than "strict or absolute necessity," but it

---

[26] *Norken Corp. v. McGahan*, 823 P.2d 622, 631 (Alaska 1991) (quoting *Demoski v. New*, 737 P.2d 780, 783-84 (Alaska 1987)). The parties do not seem to distinguish between easements by necessity and easements by implication on appeal. We have previously stated that easements by implication are "a true easement having permanence of duration and should be distinguished from a 'way of necessity' which lasts only as long as the necessity continues." *Norken Corp.*, 823 P.2d at 631 (noting that ways of necessity are also called easements by necessity). But the Andersons claim that land access is still necessary today and they sought an easement by implication, not one by necessity, in the superior court.

[27] The "Crosswind" or "Old Military" trail is another trail running approximately north and south near the parties' properties along Tolsona Lake.

[28] *Freightways Terminal Co. v. Indus. & Comm. Constr.*, 381 P.2d 977, 984 (Alaska 1963).

requires "something more than mere convenience."[29]   We have concluded that an easement was "reasonably necessary" where it constituted the only "practical means of access" to a homestead.[30]

The superior court did not err when it determined that there is no easement by implication across the Wilson property.  Even if we assume that access by road was "reasonably necessary" for these particular properties at some point in the past, there is no support for the argument that any resulting easement must be public.  We rejected a similar argument in *Demoski v. New*, affirming the superior court's finding that an easement existed, but rejecting that the resulting easement must be public.[31]  In *Demoski* there was no evidence of dedication to the public by the original landowners, which led us to conclude that the resulting easement was private.[32]  At trial in this case, no direct testimony was offered to support that earlier landowners dedicated a route to the public due to necessity.  We affirm the superior court's finding that there is no public easement by implication across the Wilsons' property.

### 3.    Easement by estoppel

The Andersons next claim they possess an oral easement by estoppel. They argue that because two neighbors testified "that unrestricted access was given in direct conversation with Kirk Wilson," they proved the existence of an easement.  They also assert that they helped to build a road under the impression that it would be public. One of these witnesses, Daniel Anderson, testified that he asked Wilson about restrictions on the road, and said that Wilson "assured me that there was no restrictions on coming, going . . . .  I understood it to be public" and that one could "go and use the road without permission."  The other witness, Gerald Lee, testified that "nobody ever

---

[29]    *Talbot's, Inc. v. Cessnun Enters.*, 566 P.2d 1320, 1324 (Alaska 1977).

[30]    *Williams v. Fagnani*, 175 P.3d 38, 41-42 (Alaska 2007).

[31]    737 P.2d 780, 789 (Alaska 1987).

[32]    *See id.* at 784-86.

told me I had to get permission to travel to my lots," but indicated that he "never asked if I had to have permission but I was never told to get it either." Kirk Wilson maintained that travel through his property had always been private and permissive and denied that he received construction assistance.

The superior court weighed the witnesses' credibility and reached the conclusion that the Andersons had not proven there was an easement by estoppel. It was free to give more weight to Kirk Wilson's testimony that travel on the road had always been permissive and less weight to the Andersons' witnesses' testimony that it was not. And again, even if the court determined an oral easement by estoppel did exist, it would not automatically be public. To prove that a *public* oral easement by estoppel has formed, "claimants must show detrimental reliance by the public at large."[33] The superior court did not err by concluding that no easement by estoppel existed based on the evidence heard at trial.

### D. The Attorney's Fee Award Requires Remand.

The Andersons also appeal the superior court's attorney's fee award. The court ordered the Andersons to pay 75% of the Wilsons' attorney's fees. They argue that the superior court abused its discretion by determining that the Wilsons were the prevailing party. They also assert that the court abused its discretion by allowing the Wilsons to include fees paid in a separate lawsuit, by determining that the fees were reasonable, and by enhancing the fee award above the usual percentage allowed by Alaska Civil Rule 82. Because the court included fees incurred in different litigation and did not provide enough detail for us to determine the basis for its conclusion that the fees charged were reasonable, we vacate and remand the attorney's fee award for further proceedings.

---

[33] *Swift v. Kniffen*, 706 P.2d 296, 301 (Alaska 1985).

### 1. Prevailing party

The Andersons concede that they were not granted the public easements they sought. But they argue that as a result of their lawsuit they received a private easement "of critical importance" and therefore that the superior court's determination that the Wilsons prevailed on every issue was manifestly unreasonable. The Wilsons respond that although the court determined the Andersons had a private easement, it rejected each of the theories the Andersons advanced.

Both sides seem to misread the court's order. The order does not discuss who prevailed on the issue of the private easement. It states instead that the Andersons "did not prevail on the main issue in the case — the public easement," and notes that the Wilsons "successfully defended against all claims for a public right of way or easement." "[T]he prevailing party is the one who has successfully prosecuted or defended against the action, the one who is successful on the main issue of the action and in whose favor the decision or verdict is rendered and the judgment entered."[34]

Litigation in the superior court was focused almost exclusively on public easements, not private ones. The superior court clearly considered the Andersons' public easement claims to be the "main issue."[35] Additionally the entirety of the Andersons' first complaint was dedicated to the alleged existence of a public easement. Only in a footnote to the first exhibit of their Second Amended Complaint did the Andersons raise, in the alternative, the issue of a private easement. The superior court did not abuse its discretion by concluding that the public easement was the main issue and the Wilsons prevailed on it.

---

[34] *BP Pipelines (Alaska) Inc. v. State, Dep't of Revenue*, 327 P.3d 185, 191 (Alaska 2014) (quoting *Schultz v. Wells Fargo Bank, N.A.*, 301 P.3d 1237, 1242 (Alaska 2013)).

[35] *See id.*

## 2. Calculation of attorney's fees

The Andersons argue that the Wilsons did not submit sufficiently detailed records for the court to calculate attorney's fees. They also argue that they are entitled to an evidentiary hearing to determine the proper amount of fees. In addition to arguing the records are inadequate, the Andersons assert that there is no basis to accept the Wilsons' attorney's fees as reasonable because their lawyer charged them significantly more than other similarly experienced attorneys in the community receive for similar representation. We agree; we therefore vacate the award and remand to the superior court. On remand the court may not include fees for hours not related to this litigation and should consider whether the fees are reasonable.[36] To determine whether the rate charged by the Wilsons' attorney was reasonable, the court must consider the "fee customarily charged in the locality for similar legal services."[37]

### a. Recordkeeping

The Andersons argue that the records submitted by Phillip Paul Weidner & Associates were not sufficiently detailed to determine "the reasonableness of the time spent and relation to the case."[38] Attorney's fees must be supported by "accurate records of the hours expended and a brief description of the services reflected by those hours."[39] And it is an abuse of discretion to deny discovery for attorney's fee awards where entries "were so vague that [a party] could not discern which legal matter

---

[36] *See Hodari v. State, Dep't of Corr.*, 407 P.3d 468, 473 (Alaska 2017) ("Any requested attorney's fees are . . . subject to a showing of reasonableness and connection to the litigation.").

[37] *Nautilus Marine Enters. v. Exxon Mobil Corp.*, 332 P.3d 554, 559 (Alaska 2014) (quoting Alaska R. Prof. Conduct 1.5(a)(3)).

[38] The Andersons do not dispute records from the Wilsons' previous counsel.

[39] *Hayes v. Xerox Corp.*, 718 P.2d 929, 939 (Alaska 1986).

corresponded to each entry."[40] The superior court concluded that the records submitted by the Wilsons' counsel were "sufficiently detailed, meeting the requirements set out by the Alaska Supreme Court."

The Wilsons' motion for attorney's fees was supported by billing and timekeeping records submitted by Weidner. The attachments included the Wilsons' fee agreement with Weidner, a 21-page "timekeeper manager report" listing hourly billing entries with varying levels of specificity, a 28-page report of phone calls, a 1-page document apparently reflecting over 1,000 hours of "meetings," a sworn affidavit in support of the fees charged to the Wilsons, and biographical information about Weidner and his associate. The Andersons point out entries in Weidner's records for research, drafting, and editing with no reference to what the issue, document, or filing was. They also note that the 28 pages apparently representing charges for phone calls have no description at all — the entries list only the date and the length of calls in quarter-hour increments. Finally, they point out charges billed for an EPA matter that was not part of this litigation.[41]

In previous cases examining whether records were detailed enough to support an attorney's fee award, we have said that "[a]ny requested attorney's fees are . . . subject to a showing of reasonableness and *connection to the litigation*."[42] We have affirmed the exclusion of fees supported only by entries under a "Supervise Paralegal Activities" heading that indicated, for example, "PJ on post brief issues" or "PJ on oral argument."[43] We characterized those entries as vague and noted that they did not

---

[40] *In re Est. of Johnson*, 119 P.3d 425, 431 (Alaska 2005).

[41] The superior court expressly excluded fees related to another matter on which the Wilsons did not prevail. It also limited the award to hours actually billed.

[42] *Hodari v. State, Dep't of Corr.*, 407 P.3d 468, 473 (Alaska 2017) (emphasis added).

[43] *Warnke-Green v. Pro-West Contractors, LLC*, 440 P.3d 283, 293 & n.46 (Alaska 2019).

clearly show the attorney's contribution to a particular matter or issue.[44]  Indeed for some of the time entries and phone calls in this case it is impossible to "discern which legal matter corresponded to each entry."[45]  It is difficult to know, for example, the corresponding legal issue or matter for an entry marked only "phone call."  The vagueness in the billing records, taken together with the inclusion of charges relating to an EPA matter to which the Andersons were not a party, require a closer examination of their connection to this case.  We therefore vacate and remand to the superior court for further consideration of the billing records, phone records, and discrepancies, such as the inclusion of the EPA matter.

### b.       Hourly rate

The Andersons further contend that the court abused its discretion by approving hourly rates that were significantly higher than the "prevailing rates charged in the community."  The superior court concluded that the rates were reasonable in light of the attorneys' qualifications, experience, and skills, but offered few details about how it reached that conclusion.

In *Nautilus Marine Enterprises v. Exxon Mobil Corporation* we held that, for the partial reimbursement of attorney's fees under Rule 82, " 'the fee customarily charged in the locality for similar legal services' is the basis on which awards should ordinarily be calculated."[46]  We also concluded that the consideration of rates outside of a locality is warranted only in extraordinary circumstances.[47]

---

[44]    *See id.*

[45]    *See In re Johnson*, 119 P.3d at 431.

[46]    332 P.3d 554, 559 (Alaska 2014) (quoting Alaska R. Prof. Conduct 1.5(a)(3)).

[47]    *Id.*  The Wilsons argue on appeal that such extraordinary circumstances are present here and therefore a departure was warranted.  But they appear to raise this argument for the first time on appeal and accordingly it is waived.  *See Adkins v. Collens*, 444 P.3d 187, 195 (Alaska 2019).

There is little support in the record that the hourly rate charged by the Wilsons' attorney is reasonable. The superior court mentioned his experience and qualifications. But the evidence consists primarily of an index used in federal court to determine reasonable attorney's fees in "public interest litigation," not private property disputes. The only other evidence is an affidavit from an Anchorage-area attorney of similar experience stating his typical hourly rate. But his highest hourly rate is just over half of that charged by the Wilsons' counsel at various points in this litigation.

The evidence provided to the court demonstrated that the Wilsons' attorney charged rates far higher than "the fee customarily charged in the locality for similar legal services."[48] The decision to accept such an hourly rate as reasonable based on that evidence was arbitrary and therefore an abuse of discretion. We remand to the superior court for further findings and consideration of the fees charged by the Wilsons' counsel.[49] On remand, the superior court should consider whether the rates charged by the Wilsons' counsel are commensurate with those charged by attorneys with similar experience in the Anchorage region and the sufficiency of detail in the billing records submitted by the Wilsons' counsel.

### 3. Attorney's fee enhancement

The Andersons finally argue that the superior court erred when it enhanced the award of the attorney's fees and that the resulting award will deter similarly situated litigants. We observe that "[a]pplication of Rule 82(b)(3) factors is discretionary, not mandatory."[50] We are not persuaded by the Andersons' arguments.

---

[48] *See Nautilus Marine*, 332 P.3d at 558, 559.

[49] The Andersons also appeal the denial of their motion for an evidentiary hearing as to fees. Because we remand the consideration of attorney's fees to the superior court, we do not address whether the superior court erred in denying the Andersons' motion for a hearing.

[50] *Rhodes v. Erion*, 189 P.3d 1051, 1055 (Alaska 2008).

The Andersons first argue that our case law "disfavors complexity as a justification for enhanced fees where total fees are calculated on an hourly basis" and that "[m]ere complexity is not generally an acceptable basis for enhanced attorney fees." The Wilsons respond that Rule 82 specifically lists complexity as a factor justifying a variance from the default award.[51]

We have previously rejected both of the Andersons' arguments. Our case law does not "disfavor" enhancing fees based upon the complexity of the matter. "While we have occasionally expressed concern about the use of . . . complexity of the litigation . . . to enhance fees where the fees are calculated on an hourly basis, we have repeatedly upheld its use."[52] And we have expressly affirmed the "use of complexity as the sole enhancing factor."[53] The superior court explained the enhancement in this case was due to the involvement of "considerable complex issues" including review of historic documents, property transfers, maps, and plats. The 12-day trial included ten lay witnesses, two expert witnesses,[54] and hundreds of exhibits. The court did not abuse its discretion by enhancing the fee award due to complexity.

The Andersons also argue they did not engage in bad faith conduct. The superior court found "there [was] clear and convincing evidence that [the Andersons] did engage in bad faith conduct by continuing to violate the Court's Preliminary

---

[51] *See* Alaska R. Civ. P. 82(b)(3)(A) (permitting court to vary fee award upon "consideration of . . . factors" including "complexity of the litigation").

[52] *Ware v. Ware*, 161 P.3d 1188, 1199 (Alaska 2007) (internal citations omitted).

[53] *BP Pipelines (Alaska) Inc. v. State, Dep't of Revenue*, 327 P.3d 185, 197 (Alaska 2014) (collecting cases).

[54] Although the superior court's order on fees indicates three expert witnesses testified in this case, the court qualified only two to testify as expert witnesses.

Injunction, even during the trial." The Andersons argue this finding was insufficiently detailed and unsupported by the record.

Kirk Wilson testified that he had "way over 100 pictures of people trespassing on our property since the judge . . . put that [preliminary injunction] out." He noted that two of his neighbors expanded or installed new parking lots and that there was a "new group" of people and more people trespassing than previously.

The superior court based its conclusion in part on the fact that Gerald Lee was actively allowing members of the general public to access his property by crossing the Wilsons' property. The preliminary injunction required the Andersons "to refrain from inviting members of the general public from traveling on [the Wilsons'] land." Lee testified that he continued to allow two to five vehicles per weekend to visit and that he did not think he was violating the injunction. He acknowledged that he did not necessarily keep track of who the visitors were, but he maintained they were his guests and clients.

There was sufficient evidence that some of the Anderson plaintiffs acted in bad faith, and the superior court was free to credit the Wilsons' testimony over the Andersons'.[55] The court did not abuse its discretion when it enhanced the attorney's fee award based on bad faith.[56]

Finally, the Andersons argue that the enhanced award will deter similarly situated litigants. Rule 82(b)(3)(I) permits a court to consider whether "a given fee

---

[55] *See Fink v. Mun. of Anchorage*, 379 P.3d 183, 193 (Alaska 2016) ("[W]e will not overturn or re-weigh a trial court's factual findings in the face of conflicting evidence when the record supports those findings.").

[56] The Andersons maintain that "[t]he alleged conduct had no relationship to the conduct of the litigation itself." And they are correct that a fee enhancement may be based only on conduct that occurred during the litigation itself and not the transaction underlying the litigation. *See Sykes v. Lawless*, 474 P.3d 636, 647 (Alaska 2020). But the superior court found that the Andersons had violated a preliminary injunction, creating a direct link between their conduct and the litigation.

award may be so onerous to the non-prevailing party that it would deter similarly situated litigants from the voluntary use of the courts." In making this determination, courts can consider "the nature of the claim advanced and the economic incentives for similarly situated litigants to bring similar claims."[57] But "[a]pplication of Rule 82(b)(3) factors is discretionary, not mandatory."[58]

The superior court specifically observed that while a particularly large fee award might be "onerous," there are 18 Anderson plaintiffs, and therefore "even if the court were to award full fees, this would not be particularly onerous." "[A] court may depart from the Rule 82 schedule by considering the enumerated equitable factors but is by no means required to do so."[59] The court did not abuse its discretion; we affirm the superior court's enhancement of the attorney's fees.

## V. CONCLUSION

We AFFIRM the superior court's easement decisions. We VACATE and REMAND the award of attorney's fees for recalculation consistent with this opinion.

---

[57] *State v. Native Vill. of Nunapitchuk*, 156 P.3d 389, 406 (Alaska 2007).

[58] *Rhodes v. Erion*, 189 P.3d 1051, 1055 (Alaska 2008).

[59] *Greene v. Tinker*, 332 P.3d 21, 42 (Alaska 2014) (citing *Rhodes*, 189 P.3d at 1055).