*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@akcourts.gov.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| DION KIRK HUMPHREY, | ) | |
| | ) | Supreme Court No. S-19351 |
| Appellant, | ) | |
| | ) | Superior Court No. 3AN-23-06572 CI |
| v. | ) | |
| | ) | OPINION |
| ROBERT K. REGES and MALA J. REGES, | ) | |
| | ) | No. 7812 – June 5, 2026 |
| | ) | |
| Appellees. | ) | |
| | ) | |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Anchorage, Dani Crosby, Judge.

Appearances: Dion Kirk Humphrey, pro se, Anchorage, Appellant. Robert K. Reges, Reeves Amodio, LLC, Anchorage, for Appellees.

Before: Carney, Chief Justice, and Borghesan, Henderson, Pate, and Oravec, Justices.

CARNEY, Chief Justice.

## I.     INTRODUCTION

A self-represented landowner sued his neighbors for encroachment, alleging that they had constructed a wall along the property line that extended into his lot. The neighbors denied that the wall extended into his property and asserted that even if it did, they had acquired title to the land under the wall by adverse possession. One of the neighbors, an attorney, represented himself and his wife in the suit.

Before trial, the landowner asked the court to admit exhibits, recuse itself, and order a jury trial. The court denied each request for untimeliness or failure to follow court rules. At trial the landowner interrupted proceedings, argued with the court, and disregarded the court's explanations and instructions. The court restricted the landowner to remote participation and warned him that further interruptions would result in his removal from the proceedings altogether. After his disruptive behavior continued, the landowner was removed from trial.

The superior court found that the wall was entirely within the neighbors' lot, but even if it intruded slightly, the neighbors had obtained the land by adverse possession. It also awarded attorney's fees to the neighbors. The landowner appeals.

This is the first time that we have considered whether a trial court abuses its discretion by removing a disruptive civil litigant from trial; we conclude the court did not abuse its discretion by removing the landowner from trial. And it did not abuse its discretion when it awarded attorney's fees to the neighbors. We also conclude that the landowner waived the majority of his claims on appeal. We therefore affirm the superior court's order.

## II. FACTS AND PROCEEDINGS

### A. Facts

Two property owners disputed the location of a retaining wall between their adjacent lots. Robert Reges, an attorney, purchased Lot 38 in 2006 with his wife, Mala.[1] Dion Humphrey purchased Lot 39 in 2008. The lots are divided by an angled property line consisting of three angles or points: a northern corner, a middle corner, and a southern point. Throughout the litigation, the corners have been referred to as corners #1, #2, and #3, respectively.[2]

---

[1] We refer to Robert Reges individually as "Reges."

[2] The diagram is taken from the copy of the 2006 survey included with the Regeses' answer.



In 2006 the Regeses retained Fred Walatka of Walatka & Associates to survey the property. Sometime between 2006 and 2023, the Regeses erected a retaining wall along the boundary line between the two properties.

In May 2023 Humphrey retained Elizabeth Walatka of the same firm to complete a new survey of the property line. The following month, Humphrey sent an email to Reges informing him that the retaining wall extended onto Humphrey's property by "14.6 square feet." As proof, Humphrey attached another email from an unidentified Walatka & Associates employee informing him of the overage. Humphrey informed Reges that he sought removal of the wall and "compensation."

Reges denied that the wall encroached onto Humphrey's property. He offered to excavate one of the corners between the lots (corner #2) to reveal an underground "monument" that the 2006 survey, on which he relied to locate the wall,

had designated as marking the dividing line between the properties. Humphrey responded that he would be "taking court action."

**B.     Proceedings**

In June Humphrey, representing himself, sued the Regeses for "encroachment on property fence/retaining wall." His complaint was accompanied by several "exhibits," including the 2023 survey.

The Regeses answered, noting that they "unders[tood] Plaintiff's cause of action to be one for 'recovery of real property' under Alaska Statute (AS) 09.45.630." They argued that the retaining wall was entirely within Lot 38, so Humphrey did not have title to the land under it. They also argued that no portion of the wall extended onto Humphrey's lot and that the 2023 survey showed that the wall existed either within Lot 38 or on the boundary line, but not over it. The Regeses also raised three counterclaims, including adverse possession under AS 09.45.052(a).[3] And they asked the court to dismiss Humphrey's complaint and give them a recordable order confirming that all land under the retaining wall belonged to Lot 38.

Humphrey did not answer the Regeses' counterclaims. But early in the litigation he filed numerous motions that the court denied, each time explaining why it was not being accepted. For example, two days after he filed his complaint, Humphrey submitted a motion to admit exhibits with the description "Evidence in Support." The court denied the motion because it did not comply with the Alaska Rules of Civil Procedure and explained in a separate order that a request to admit evidence occurred at trial, not through motion practice, and that a trial date was forthcoming.

On October 6, 2023, the court issued a routine pretrial order setting trial for September 2024. The pretrial order erroneously stated that one of the parties had requested a jury trial. But it was not until October 19 that Humphrey filed a "Motion

---

[3]     The Regeses' other counterclaims included a request to quiet title to the land beneath the retaining wall and to confirm that the land belonged to Lot 38.

for Diverse Jury." The Regeses opposed, pointing out that the pretrial order incorrectly stated a jury trial had been requested, and that Humphrey's request was untimely. Humphrey objected to the Regeses' opposition. The court denied his request for a jury trial. It noted that Civil Rule 38(b) required any request to be filed "not later than 10 days after the service of the last pleading."

Humphrey continued to file motions asking the court to take "judicial notice" of his complaint, emails, and all of the documents and exhibits he had submitted. The Regeses opposed each of Humphrey's filings. The superior court denied each motion, each time providing background information and directing Humphrey to the rules of evidence for more information about how to use motions appropriately.

In January 2024 Humphrey filed a "petition for writ of mandamus" challenging the court's decision to deny him a jury trial. He asked the court to grant him a jury trial and recuse itself.[4] The court denied the petition, explaining that the request for a jury trial remained untimely and again declining to recuse itself.[5] The court issued a corrected pretrial order, confirming the trial date and noting that no timely request for a jury trial had been made. Humphrey continued to file motions arguing for a jury trial until the court sanctioned him $25.

The Regeses served Humphrey with their initial discovery requests, which he opposed in May. They requested permission to enter Humphrey's property to excavate the corner #2 monument, but Humphrey did not allow that request. The Regeses moved to compel Humphrey to participate in discovery. Over Humphrey's opposition, the court granted the motion and ordered Humphrey to provide initial

---

[4] Humphrey had also filed a recusal motion shortly after the judge was assigned, based on an unrelated case that was assigned to the same judge. The motion mentioned that Humphrey might subpoena the judge for a federal trial. The motion was denied and affirmed after review.

[5] The recusal decision was later affirmed by another superior court judge.

disclosures, answer interrogatories, and comply with requests for production. The court also ordered Humphrey to permit Reges to enter his property with a surveyor for the purpose of unearthing the corner #2 monument.

The Regeses filed their trial brief in August. They acknowledged that after the court ordered the excavation of corner #2, the monument had not been found. They argued that the 2006 survey nevertheless showed it had existed at that time, and explained that shortly after the survey was complete, Reges had marked the monument's location with a staked flag which he used to guide the positioning of the retaining wall.

The Regeses also argued in the alternative that their treatment of the disputed area since commissioning the 2006 survey satisfied the elements of adverse possession. They stated they constructed a preliminary fence in 2007, temporarily removed the fence to construct a shed in 2008, reinforced the fence with new materials between 2010 and 2012, and in 2014 used the fence as a guide to construct the retaining wall. They also stated that Reges had spoken with Humphrey about the retaining wall and its location in 2013. The Regeses argued that each of these actions put Humphrey "on notice" that they had "openly, notoriously and exclusively" occupied the area at issue. They asked the court to find that the retaining wall did not encroach onto Humphrey's property, and for an order recognizing an easement appurtenant to Lot 38 to avoid re-platting the boundaries between each lot.

Trial began in September 2024. Humphrey did not submit a trial brief or a preliminary witness list, and did not call any witnesses other than himself. Following Humphrey's opening argument, Reges began his but Humphrey interrupted him. The court directed the parties to avoid speaking over others and instructed Humphrey to raise his hand if he wished to speak.

Humphrey then testified. He stated that he purchased Lot 39 in 2008, that aerial photographs undermined the Regeses' claim that Reges first constructed a fence between the two lots in 2008, and confirmed his position that the fence intruded into his

lot. Humphrey tried to admit a copy of the email he claimed he received from a Walatka & Associates employee that stated the retaining wall encroached onto his property. Reges objected that it was hearsay. The court agreed and did not admit the email.

When Reges cross-examined Humphrey, Humphrey consistently interrupted both Reges and the court. The court repeatedly admonished Humphrey but also explained court rules, trial procedures, and the importance of being polite and appropriate. Humphrey agreed that he spoke with Reges about the location of the retaining wall in 2013. He stated that it was due to the COVID-19 pandemic that he could not obtain his own survey of the property line sooner to determine whether the retaining fence actually encroached onto his property. Humphrey made allegations of discrimination against the Regeses and accused Reges of being "crooked."

The Regeses next called a witness to testify about helping Reges begin construction of the wall in 2013. Humphrey interrupted Reges's questioning repeatedly, prompting the court again to admonish him. The court informed Humphrey that his turn to ask questions would be on cross-examination and warned him it would not tolerate continued interruptions.

The next day Humphrey again tried to admit the copy of the email from the Walatka & Associates employee; the court again declined to admit the hearsay. Humphrey continued to interrupt the court and it informed him that if he did not stop, it would either have Judicial Services officers present in the courtroom or the trial would move to videoconference. The court also advised Humphrey that it would consider a continuance to allow him to identify the author of the email and present the author as a witness. But Humphrey spoke over the judge while she was explaining what he would need to do to call the author as a witness, so the court moved the trial to videoconference.

After the proceedings resumed on videoconference, Humphrey requested a continuance so that he could hire an attorney. Reges opposed, arguing that Humphrey had finished presenting his case, and a continuance would prejudice him and Mala. The

court granted a continuance and rescheduled trial for November. The court also stated that it would not allow Humphrey to present his case again, but that, given his status as a self-represented litigant, it would allow him to call the author of the Walatka & Associates employee email as a witness. It instructed Humphrey to identify the email's author and provide notice to the court and the Regeses by November 4 if he wanted that individual to testify. The Regeses opposed, but the court declined to revisit its order.

After Humphrey did not provide notice to either the court or the Regeses about the identity of the email's author, the court issued an order on November 6 prohibiting him from calling any additional witnesses. Nonetheless, when trial resumed, Humphrey — who had not hired a lawyer — attempted to call the Walatka employee who had purportedly written the email as a witness. The court again explained why he could not, but noted that it would consider the employee's testimony as an offer of proof instead. Humphrey continued to argue about calling the employee as a witness, leading the court to warn him that any further interruptions would result in returning to videoconference. The Regeses consented to an offer of proof.

Humphrey called the Walatka employee to make an offer of proof. The employee stated that he was not a registered surveyor but assisted with the 2023 survey, that he sent the email, and that the overage identified in the email was calculated based on measurements he took while conducting the 2023 survey. The employee clarified that the fence was on the property line and, considering the minimal extent of the encroachment and fact that fences tend to straddle lot lines, the request to calculate any overage was highly unusual. He testified that the measurements he took showed about a two-inch overage along a distance of 33 feet following the fence line.

The Regeses then presented the deposition of Elizabeth Walatka. But Humphrey's outbursts and interruptions continued, and the court once again ordered Humphrey to participate by videoconference, this time allowing the Regeses to remain in the courtroom. His disruptions continued. Humphrey repeatedly unmuted himself, prompting the court to warn him that his behavior would result in ejection from the trial;

when his behavior did not change, it removed him entirely from the trial. The court informed Humphrey that he could file a written closing argument later and obtain a recording of the rest of the trial. The Regeses presented their case without interruption for the rest of the day.

Humphrey did not participate in the next trial day when the Regeses put on the rest of their case. The court ordered the parties to submit written final arguments and proposed findings of fact and conclusions of law. Both parties submitted proposed factual findings and legal conclusions.

The court adopted the Regeses' proposed findings and conclusions. It found that Humphrey retained title to Lot 39, while the Regeses were the owners of Lot 38. It also found that both parties had presented surveys showing the boundary lines between each lot, and that while a monument had been placed at corner #2 when the lots were originally platted, the monument was not located during the 2023 excavation. But the court concluded that the evidence demonstrated the retaining wall existed entirely within Lot 38. Because the Regeses retained title to Lot 38, the court concluded they also retained the right to possess the property, and it denied Humphrey's ejectment claim.

The court also found that the Regeses began to use the disputed area in 2007 when the preliminary fence was erected. It determined that the Regeses continuously occupied the area by constructing additional structures, culminating in the retaining wall in 2014. And it concluded that to the extent the 2023 survey identified a small overage onto Lot 39 near corner #2, the Regeses had obtained the right to occupy that area by adverse possession.

The court granted the Regeses a prescriptive easement appurtenant to the portion of Lot 39 under the retaining wall and fence. And it awarded them attorney's fees of $37,566.70 under Alaska Civil Rule 82 as the prevailing party after trial.

Humphrey, still representing himself, appeals.

## III. STANDARD OF REVIEW

In *Douglas v. State*, we applied an abuse of discretion standard to a court's decision to remove a criminal defendant from trial, reasoning that "[t]he trial court is charged with maintaining courtroom decorum, and it is in the best position to assess how disruptive a defendant's behavior is and how likely it is to continue."[6] Given that we applied an abuse of discretion standard to the removal of a criminal defendant from a trial where "the decision to remove or restrain a disruptive [party] implicates important constitutional rights" that are not at stake in a civil lawsuit, we see no reason to conclude that any different standard should apply here.[7] Therefore, a trial court's decision to remove a disruptive civil litigant is likewise reviewed for abuse of discretion.

We also review awards of attorney's fees for abuse of discretion.[8] A court abuses its discretion if it issues a decision that is "arbitrary, capricious, manifestly unreasonable, or stem[s] from an improper motive."[9]

## IV. DISCUSSION

We construe Humphrey's arguments liberally because he is representing himself.[10] "This more lenient standard reflects a policy against finding unintended waiver of claims in technically defective pleadings filed by [self-represented] litigants."[11]

---

[6]    214 P.3d 312, 319 (Alaska 2009).

[7]    *Id.*

[8]    *Anderson v. Wilson*, 555 P.3d 13, 20 (Alaska 2024).

[9]    *Id.*; *accord Douglas*, 214 P.3d at 319.

[10]    *Wright v. Anding*, 390 P.3d 1162, 1169 (Alaska 2017).

[11]    *Torrence v. Blue*, 552 P.3d 489, 492 (Alaska 2024) (quoting *DeNardo v. Calista Corp.*, 111 P.3d 326, 330 (Alaska 2005)) (internal quotation marks omitted).

**A.    The Superior Court Did Not Abuse Its Discretion By Removing Humphrey From The Trial.**

Humphrey argues in his opening brief that by excluding him from trial the superior court violated his constitutional right to due process, including his right to be heard.  The Regeses argue that Humphrey's removal from the trial was justified based on his behavior.

A civil litigant's right to be present at trial is rooted in the right to due process of law.[12]  The Alaska Constitution provides that "[n]o person shall be deprived of life, liberty, or property, without due process of law."[13]   The United States Constitution provides the same.[14]  We have held that at a minimum, "due process requires that the parties receive notice and an opportunity to be heard."[15]

But we have also upheld the removal of a criminal defendant from trial for inappropriate courtroom conduct and recognized that "the right to be present at trial is not absolute."[16]  In *Illinois v. Allen*, the United States Supreme Court held that a criminal defendant may waive his right to be present at trial if, following warnings, "he nevertheless insists on conducting himself in a manner so disorderly, disruptive, and disrespectful of the court that his trial cannot be carried on with him in the courtroom."[17]

---

[12]    Alaska Const. art. I, § 7; *see Ryfeul v. Ryfeul*, 650 P.2d 369, 372 (Alaska 1982); *cf. Douglas*, 214 P.3d at 319 (holding criminal defendant's right to be present is rooted in right to due process of law); *Wamser v. State*, 652 P.2d 98, 101 n.10 (Alaska 1982) (same).

[13]    Alaska Const. art. I, § 7.

[14]    U.S. Const. amend. V ("No person shall . . . be deprived of life, liberty, or property, without due process of law . . . .").

[15]    *Haggblom v. City of Dillingham*, 191 P.3d 991, 995 (Alaska 2008); *accord Matanuska Maid, Inc. v. State*, 620 P.2d 182, 192 (Alaska 1980) ("The crux of due process is opportunity to be heard and the right to adequately represent one's interests.").

[16]    *Douglas*, 214 P.3d at 319, 321.

[17]    397 U.S. 337, 343 (1970).

In *Douglas v. State* we applied *Allen* after the superior court removed a criminal defendant from trial who, over a two-year period, frequently interrupted proceedings, argued irrelevant facts, and insulted the prosecutor, his attorneys, and the judge.[18] Despite warnings that he would be expelled from the courtroom if he continued to engage in disruptive behavior, the defendant's conduct did not improve.[19] Because the defendant "ha[d] been fully and fairly informed that his conduct [was] wrong and intolerable, and warned of the possible consequences of continued misbehavior," we concluded that his removal was not an abuse of discretion.[20]

Civil litigants have a lesser right to be present at trial than criminal defendants.[21] Federal courts have recognized that the U.S. Constitution does not grant a civil plaintiff the absolute right to be present during trial and that disruptive conduct can result in a waiver of this right.[22] In *Kulas v. Flores*, the Ninth Circuit Court of Appeals noted that before a district court could remove a disruptive self-represented civil litigant from a courtroom, it must "weigh the plaintiff's interest in being present against the need for order in the courtroom and the defendant's right to a fair trial."[23] It reasoned that a self-represented civil plaintiff's access to the courts is contingent on basic decorum and respect.[24] And, were a court to let a plaintiff disrupt court

---

**18** 214 P.2d at 314, 321.

**19** *Id.* at 314-17.

**20** *Id.* at 321 (quoting *Allen*, 397 U.S. at 350 (Brennan, J., concurring)) (internal quotation marks omitted).

**21** *Kulas v. Flores*, 255 F.3d 780, 787 (9th Cir. 2001) (recognizing that a self-represented "plaintiff's interest in remaining in the courtroom is entitled to less protection than a criminal defendant's.").

**22** *See, e.g.*, *id.* at 786; *Faucher v. Lopez*, 411 F.2d 992, 996 (9th Cir. 1969); *Helminkski v. Ayerst Laboratories*, 766 F.2d 208, 213 (6th Cir. 1985).

**23** 255 F.3d at 783, 786.

**24** *Id.* at 787.

proceedings, it could interfere with the defendant's right to a fair trial.[25] Accordingly, because the plaintiff in *Kulas* was warned about the consequences of his disruptive courtroom behavior, the court of appeals concluded it was a proper exercise of discretion for the trial court to expel him from the trial.[26]

Here, Humphrey's case does not involve the fundamental rights of a criminal defendant. Humphrey was a self-represented civil litigant who continually disrupted the proceedings, disrespected the court, and made it impossible for trial to proceed in a matter that he initiated. Therefore, while Humphrey has a right to be present under the Alaska Constitution, he is entitled to less protection than the criminal defendant in *Douglas*.

The trial court gave Humphrey ample opportunities to conduct himself appropriately: it explained courtroom procedures, reminded him to speak only when it was his turn, and provided opportunities to remedy his behavior. As Humphrey's conduct failed to improve, the court gradually stepped up consequences by admonishing him and warning it would move the trial to videoconference or bring in Judicial Services officers to monitor his behavior. But the outbursts continued, and Humphrey's interruptions led the court to move him to videoconference on two separate occasions. Even by videoconference Humphrey's interruptions continued, requiring the court to repeatedly mute his line.[27]

Only when the court had exhausted all other options did it remove Humphrey from the trial, and not before warning him of the consequences of his continued unruly behavior. The court displayed commendable respect and patience

---

[25]     *Id.*

[26]     *Id.*

[27]     Refusing to turn off background noise from his TV, Humphrey stated, "Ma'am, I'm not going to turn [it] off, I can hear you loud and clear." For this reason, Humphrey's argument that his conduct was a result of his unfamiliarity with legal procedures has no merit.

throughout these proceedings, but ultimately, Humphrey's expulsion was a result of his unwillingness to behave appropriately in a case that he brought. His refusal to behave appropriately, despite repeated instructions and warnings from the court, prevented trial from proceeding. His conduct interfered with the Regeses' right to a fair trial. The superior court was therefore within its authority to exclude him.

We also note that Humphrey's removal did not foreclose his final opportunity to present arguments to the court. Following the close of trial, Humphrey submitted proposed findings of fact and conclusions of law.

For these reasons, we conclude as a matter of first impression that Humphrey lost his constitutional right to be present and it was not an abuse of discretion to remove him from trial.[28]

## B. By Failing To Adequately Brief His Arguments On Appeal, Humphrey Waived The Remainder Of His Claims.

"On appeal . . . the [f]ailure to argue a point of law constitutes abandonment."[29] We consider a claim raised when the court can discern a party's legal arguments from the party's brief and the opposing party could reply to them.[30] However, "even self-represented litigants must provide more than a cursory statement to be considered on appeal."[31] "[E]ven when a [self-represented] litigant is involved,

---

[28] Humphrey also argues that the court abused its discretion by awarding "substantial" attorney's fees to the Regeses. The court awarded the amount prescribed by Civil Rule 82 for the prevailing party in a case that has gone to trial. Alaska R. Civ. P. 82(b)(2). This was not an abuse of discretion.

[29] *Oels v. Anchorage Police Dep't Emps. Ass'n*, 279 P.3d 589, 598 (Alaska 2012) (second alteration in original) (quoting *Smallwood v. Cent. Peninsula Gen. Hosp., Inc.*, 227 P.3d 457, 460 (Alaska 2010)) (internal quotation marks omitted).

[30] *Mitchell v. Mitchell*, 370 P.3d 1070, 1083 (Alaska 2016) (citing *Peterson v. Ek*, 93 P.3d 458, 464 n.9 (Alaska 2004)).

[31] *Antenor v. State, Dep't of Corr.*, 462 P.3d 1, 14 (Alaska 2020).

an argument is considered waived when the party 'cites no authority and fails to provide a legal theory' for his or her argument."[32]

Humphrey raises additional challenges to the superior court's actions and order, but he relies on no authority for those arguments in his briefs.[33] His arguments are unclear and difficult to discern, and he does not explain the legal and factual support for his contentions. Instead, Humphrey uses broad statements to suggest that he was wronged without clearly or directly identifying sources of error. He cites two cases, a statute, and the due process section of the Alaska Constitution in his "Authorities Relied Upon" section, but why he cites them and how he applies those authorities is unclear. Although we construe the pleadings of self-represented litigants liberally,[34] Humphrey has not provided enough information in his opening brief for us or the Regeses to respond to his legal arguments. Therefore, the remainder of his arguments are waived.[35]

## V. CONCLUSION

The superior court's decision is AFFIRMED.

---

[32] *Mitchell*, 370 P.3d at 1083 (quoting *Gilbert v. Sperbeck*, 126 P.3d 1057, 1062 (Alaska 2005)).

[33] Humphrey appears to argue that the superior court erred by denying his motions for a jury trial; refusing to allow the email author to testify as a witness; finding that the 2006 survey marked the location of the corner #2 monument; and applying the law of adverse possession; he also argues that the court was biased against him.

[34] *Mitchell*, 370 P.3d at 1083.

[35] *Petersen v. Mut. Life Ins. Co. of N.Y.*, 803 P.2d 406, 410 (Alaska 1990) ("Where a point is not given more than a cursory statement in the argument portion of a brief, the point will not be considered on appeal.").